1   Elayna J. Youchah, Bar No. 5837
    youchahe@jacksonlewis.com
2   Ethan D. Thomas, Bar No. 12874
    ethan.thomas@jacksonlewis.com
3   **JACKSON LEWIS LLP**
    3800 Howard Hughes Parkway, Suite 600
4   Las Vegas, Nevada 89169
    Tel: (702) 921-2460
5   Fax: (702) 921-2461

6   *Attorneys for Defendant Victoria Partners dba*
    *Monte Carlo Resort and Casino*

7

8                    **UNITED STATES DISTRICT COURT**

9                         **DISTRICT OF NEVADA**

10  PABLO MARTINEZ, TYRONE            Case No.: 2:12-cv-00502-JAD-VCF
    ARMSTRONG, CARY VAN BIEZEN and
11  DANIEL ATKINSON,

12              Plaintiffs,
                                      **DEFENDANT VICTORIA PARTNERS'**
13       v.                           **MOTION FOR SUMMARY JUDGMENT**
                                      **AS TO CARY VAN BIEZEN**
14  VICTORIA PARTNERS dba MONTE
    CARLO RESORT AND CASINO; THE
15  LIGHT GROUP dba DIABLO'S
    CANTINA, LLC and MC STEAK, LLC;
16  and DOES 1 through 10, inclusive,

17              Defendants.

18       Defendant Victoria Partners dba Monte Carlo Resort and Casino ("Monte Carlo") moves

19  the Court for summary judgment in its favor and against Plaintiff Cary Van Biezen ("Van

20  Biezen") for five independent reasons: (1) Van Biezen filed only one Charge of Discrimination,

21  amended, against Monte Carlo, which alleges retaliation only and, as such, he cannot assert

22  claims for sex or age discrimination; (2) Van Biezen's sex and age claims are also barred due to

23  his failure to list them as contingent claims in bankruptcy; (3) Van Biezen cannot state a prima

24  facie case of sex discrimination against Monte Carlo, but even if he does, there is no evidence of

25  pretext, (4) Van Biezen cannot show that "but for" his age, Monte Carlo would not have taken

26

27

28

JACKSON LEWIS LLP
   LAS VEGAS

some unidentified employment action, and (5) Van Biezen cannot establish the necessary causal connection between alleged adverse action and his protected activity and therefore his retaliation claim fails.

This Motion for Summary Judgment is based on Fed. R. Civ. P. 56, the attached Memorandum of Points and Authorities, the exhibits attached hereto, and any oral argument this Court deems appropriate.

Respectfully submitted this 12th day of September, 2013.

JACKSON LEWIS LLP

_/s/ Elayna J. Youchah_
Elayna J. Youchah, Bar # 5837
Ethan D. Thomas, Bar # 12874
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169

*Attorneys for Defendant Victoria Partners dba*
*Monte Carlo Resort and Casino*

## MEMORANDUM POINTS AND AUTHORITIES

### I.     Facts

#### A.     Van Biezen Loves His Job At Monte Carlo, Which Has Not Changed In 17 Years.

Cary Van Biezen was hired by Victoria Partners dba Monte Carlo Resort and Casino ("Monte Carlo") in 1996.   Deposition of Cary Van Biezen (hereinafter "Van Biezen Depo."), attached as Exhibit 1, at 12:1-2.  As he explains in his deposition, Van Biezen was hired as a "Breaker Bartender" to work swing shift; he remains a Breaker Bartender at Monte Carlo working the swing shift; and, he loves his job. *Id.* at 12:3-5; 13:4-10; 13:14-16; 74:22-23.  In fact, Van Biezen likes his job so much that, while he has had the opportunity to seek other bartender positions at the Monte Carlo since hire, he has never done so. *Id.* at 74:16-23.

**B.    Van Biezen Filed One Charge of Discrimination Based On Retaliation.**

As explained in Monte Carlo's Motion to Dismiss Parts of Plaintiffs' Complaint, filed on June 28, 2012 (Dkt. # 19),[1] Van Biezen filed only one Charge of Discrimination with the EEOC on September 12, 2011, which he amended on December 5, 2011 (the "Charge").   Exhibit 2. Van Biezen's Charge (even as amended) asserts a retaliation claim only.   *Id.*   His Charge makes no reference whatsoever to sex or age discrimination.   *Id.*   On September 4, 2012, the EEOC issued a right to sue letter to Van Biezen on this Charge.   Exhibit 3.

**C.    Van Biezen Filed For Bankruptcy Protection In March 2009 But Did Not List His Claims Against Monte Carlo As A Contingent Asset.**

Van Biezen filed for bankruptcy protection on March 6, 2009.   Van Biezen Depo. at 12:14-17; Exhibit 4.   Van Biezen admits he was represented by counsel, that he believed at that time he had claims as asserted in this litigation, and that he did not list his claims against Monte Carlo in his filing under contingent or unliquidated claims or in the section seeking a list of administrative proceedings to which Van Biezen was a party.   Van Biezen Depo. at 12:24-13:3, 46:12-25; Exhibit 4 (including relevant pages of the petition) at 12 and 28.   When filing for bankruptcy protection, Van Biezen's statements were made under penalty of perjury.   Exhibit 4 at 26 and 34.   Van Biezen amended his Bankruptcy filing on July 27, 2009, and again did not disclose any contingent or unliquidated claims.   Exhibit 5 at 3.   Van Biezen's bankruptcy petition scheduled unsecured debt in the amount of $30,546.00.   Exhibit 4 at 8.   The Bankruptcy court entered an order on August 25, 2009 confirming Van Biezen's plan of reorganization.   Exhibit 6. Van Biezen is to receive a discharge of his debts upon completion of his reorganization obligations.   Exhibit 6 at 3.   The Chapter 13 Bankruptcy Trustee advised Van Biezen's unsecured creditors that they are to receive nothing under the proposed distribution.   Exhibit 7.

---

[1]    This motion remains pending before the Court.

In addition to testifying at deposition that he believes he has had claims, including loss of income, against Monte Carlo since 2007, Van Biezen previously informed the Court that his claims of sex and age discrimination are based on a charge of discrimination filed by his co-plaintiff Pablo Martinez ("Martinez") on November 1, 2007.   Exhibit 8 (pertinent parts of Plaintiffs' Opposition to Defendant Victoria Partners" Motion for Dismiss Parts of Plaintiffs' Complaint (Dkt. 21)) at 2:24-3:3.   Van Biezen further made clear that, on September 29, 2008, he signed a Third Party Certification of Charge (hereinafter, the "Third Party Certification") in order to join Martinez's November 2007 Charge. *Id.* at 3:1-2; Exhibit 9.   Moreover, Van Biezen represented to the Court that the charge to which this refers "resulted in a finding of sex and age discrimination for a class of individuals."   Exhibit 8 at 9:6-7.   This evidence makes clear is that Van Biezen knew he had contingent claims and knew he was a party to an administrative charge filed with the EEOC alleging sex and age discrimination long before he filed for bankruptcy protection in March 2009.   The Bankruptcy Court Docket Sheet shows that Van Biezen has not amended his bankruptcy filing since July 27, 2009.   Exhibit 10.

**D.    Van Biezen Has No Evidence Of Alleged Discrimination By Monte Carlo.**

Van Biezen has no evidence that supports the notion that Monte Carlo engaged in sex or age discrimination in any way or at any time.   Monte Carlo hired Van Biezen and has maintained him in the job he loves (breaker bartender) for approximately 17 years.   Van Biezen Depo. at 12:1-4; 13:4-10; 13:14-16; 74:16-23.   Van Biezen admits he signed one bid sheet only for Diablo's (in October 2007), and it is undisputed that Monte Carlo forwarded his name to Diablo's along with numerous others.   Deposition of Sherrie Ohanian (hereinafter "Ohanian Depo."), attached hereto as Exhibit 11, at 43:9-12; Van Biezen Depo. at 48:8-14; 153:10-12.   Van Biezen also admits he signed only one bid sheet for Brand before the restaurant opened.   Van Biezen

Depo. at 47:17-23.[2]   Other than signing one bid sheet for a bartender position at Diablo's in October 2007, and one bid sheet for a bartender position at Brand in March 2008, there is no evidence that Van Biezen sought alternative employment, including within Monte Carlo, because he loves his job. *Id.* at 47:17-23; 48:8-14; 74:16-23; 153:10-12.

Van Biezen further admits that he was contacted for an interview at Diablo's by a Diablo's employee, but did not attend the interview scheduled for him because of a personal conflict. *Id.* at 48:12-14; 155:9-156:2. Van Biezen does not dispute that he interviewed for a position at Brand. *Id.* at 50:1-2; 50:14-22. While he believes his Brand interview lasted three minutes, the objective evidence shows Van Biezen's recollection is wrong. Attached hereto as Exhibit 12 and 13 are the Brand Structured Interview Guides completed during two interviews conducted of Van Biezen.   Van Biezen Depo. at 165:21-166:6; Deposition of Michael MacDonnell, attached hereto in relevant part as Exhibit 14, at 13:16-18; 137:21-138:16; *see also* Declaration of Jonathan Gregson, attached as Exhibit A to Light Group's Motion for Summary Judgment on Claims Asserted by Cary Van Biezen (Dkt. 43) ¶ 5. The Brand interviewers noted several significant shortcomings in Van Biezen's knowledge and skills. Specifically, Van Biezen could not provide the grape varietals, could not really discuss champagne, and was "not really sure" about Bordeaux. Exhibit 12 at LG 00059. In fact, Van Biezen admits he had trouble with the wine questions. Van Biezen Depo. at 167:7-9. Van Biezen's lack of wine knowledge was of concern because full dining was expected at the bar and he was expected to be able to pair wines to food if requested to do so by a customer. MacDonnell Depo. at 140:16-141:5. Van Biezen's

---

[2]     Monte Carlo does not dispute that the Collective Bargaining Agreement ("CBA") between the Bartenders Union and Monte Carlo provided the framework for initial hiring at Diablo's which began in August 2007. Ohanian Depo. at 38:20-25. But, as explained by the Vice President of Human Resources for Monte Carlo, Monte Carlo's role was limited to posting bid sheets consistent with obligations to do so under the CBA and organizing informational meeting for Monte Carlo employees so that those interested in employment at Diablo's and Brand understood the positions and could bid on positions that Diablo's or Brand would fill. Ohanian Depo. at 34:5-15; 35:10-36:16; 89:17-25; 100:2-101:10; MacDonnell Depo. at 154:9-156:10.

knowledge of single malt scotch was also below par (*Id.* at 141:9-142:3).  Van Biezen also

lacked the marketing skills desired for the bartender position at Brand.  Exhibit 12 at LG00069;

Exhibit 13 at LG 00040; MacDonnell Depo. at 143:22-144:10; Van Biezen Depo. at 167:22-

168:7.

Despite Van Biezen's personal belief to the contrary, Monte Carlo played no role in any

Diablo's or Brand hiring decisions.  Ohanian Depo. at 34:5-15; 35:10-36:16; 82:13-16; 89:17-25;

100:2-101:10; MacDonnell Depo. at 154:9-156:10.    Monte Carlo had no involvement in

selecting any candidates for Diablo's or Brand.  *Id.*  Monte Carlo did not create the Diablo's or

Brand job descriptions.  Ohanian Depo. at 106:9-11.  Monte Carlo conducted no training for The

Light Group employees who conducted the interviews.  *Id.* at 89:8-16.  No Monte Carlo Human

Resources employees were present at the interviews.  *Id.* at 57:11-59:9; 60:3-9.  No members of

Monte Carlo management took part in the interview process.  *Id.* at 58:5-8; MacDonnell Depo. at

88:18-94:10.  Monte Carlo employees had no input in the hiring timeline at Diablo's or Brand.

Ohanian Depo. at 60:23-61:12.  All of the interviewers involved in the hiring process were The

Light Group representatives.  MacDonnell Depo. at 154:17-155:9; Ohanian Depo. at 58:9-11,

82:13-16. MacDonnell's testimony is clear:

> **Q:** At any time while you were involved in the hiring of bartenders at Diablo's, did Monte Carlo employees play any role in that process that you recall?
> **A:** No.
> **Q:** And at any time that you were involved in the hiring process at Brand, did any Monte Carlo employee play any role in the hiring process at that venue?
> ***
> **A:** Not one.
> **Q:** At any time that you interviewed employees at Diablo's was there a Monte Carlo employee that was part of the interview team, the people doing the interviews?
> **A:** No.
> **Q:** Was there a Monte Carlo employee that was ever involved in giving pour tests when you gave pour tests?
> **A:** Never.

| | | |
|---|---|---|
| 1 | **Q:** | And if I asked the same questions at Brand, would your answers be the same? |
| 2 | **A:** | They would be the exact same. No. |
| 3 | **Q:** | Did you ever sit in in a meeting in which applicants were considered . . . interviews would be reviewed, applicants would be reviewed. Do you remember a Monte Carlo employee ever being in such a meeting regarding applicants for a position at Diablo's? |
| 4 | | |
| 5 | | |
| 6 | **A:** | Never. |
| | **Q:** | . . . Were there similar meetings about consideration of applications for people at Brand? |
| 7 | | |
| 8 | **A:** | There were never a Monte Carlo employee present, no. |
| | **Q:** | . . . I think you spoke a lot about an Oliver Warden and Andy Masi. Did either one of those individuals ever tell you that they had spoken with a Monte Carlo employee regarding who should or should not be hiredat Diablo's or Brand? |
| 9 | | |
| 10 | | |
| 11 | **A:** | No. Because we went through a systematic process. |

MacDonnell Depo. at 154:23-156:10. Thus, The Light Group made all hiring decisions for

Brand and Diablo's without any Monte Carlo involvement whatsoever. *Id.* at 30:16-31:2, 40:5-

41:12, 47:23-48:25, 88:18-91:17; Ohanian Depo. at 35:10-23, 82:13-16, 100:2-8. Van Biezen

has no evidence to the contrary.[3]

Further, three male Monte Carlo bartenders, two over the age of 40, were offered

positions at Diablo's. Specifically, John Peterson was born on August 22, 1956 and was age 51

in 2007 when he was offered and accepted a position as a Diablo's bartender. Declaration of

Lorena Gil ("Gil Dec."), attached hereto as Exhibit 15 ¶ 9; *see also* Exhibit 16 (authenticated by

Ms. Gil). Ozzie Ahmad's birth date is January 16, 1963. He was 44 years old when he was

offered a position at Diablo's. *Id.* ¶ 10; *see also* Defendant The Light Group's Motion for

Summary Judgment on Claims Asserted by Cary Van Biezen (hereinafter referred to as "Dkt.

---

[3]     Van Biezen admits knowing nothing at all about what, if any, role Monte Carlo played in the hiring decisions at Diablo's and Brand. Van Biezen 49:8-53:1.

#43") at 6-7 ¶ 16 and citations therein.  Darren Siegmund, born August 27, 1982, was 24 years old when he left Monte Carlo to work for Diablo's.  Gil. Dec. ¶ 11; Exhibit 16.[4]

With respect to Brand, undisputed evidence also shows that two male bartenders who applied were offered positions, one of whom (Ted Paiz) was 43 years old when Brand made him an offer.  Gil Dec. ¶ 6; Exhibit 16; MacDonnell Depo. at 137:2-15.

**E.     Van Biezen's Retaliations Allegations Are Based On Personal Belief, Speculation, And Unsupported Allegations.**

*i.      Van Biezen Cash Variance Disciplines*

Van Biezen complains that he received disciplines for cash variances in retaliation for making a complaint to the EEOC.  However, this supposition is completely undermined by the objective facts.

Specifically, Monte Carlo employees who use a cash drawer during their work day, such as bartenders, pick up a cash "bank" each day that contains a predetermined amount of money.  Declaration of Keisha Sims, attached hereto as Exhibit 17 ("Sims Dec") ¶ 5.[5]  A cash variance occurs when the amount of money the employee returns at the end of the day varies from the daily revenue by more than $10.00.  *Id.* at 7; Van Biezen Depo. at 78:5-9.  Ms. Sims, together with her assistant, reviews every cash variance of more or less than $10.  Sims Dec. ¶ 9; Van Biezen Depo. at 78:10-17.  Until asked to provide a declaration in support of this motion for summary judgment, Ms. Sims did not know that Van Biezen had ever complained about any form of harassment, discrimination or retaliation at work.  Sims Dec. ¶ 2; *see also* Van Biezen Depo. at 78:18-79:3. Ms. Sims, who creates the variance (exceptions) report, has never been asked to search for cash variances made by any employee, let alone Van Biezen.  Sims Dec. ¶ 4.

---

[4]      Van Biezen admits that John Peterson, who was a Monte Carlo bartender, has worked for Diablo's since November 2007, and that Mr. Peterson is *older* than Van Biezen.  Van Biezen Depo. at 68:21-69:6.

[5]      Ms. Sims explains there are approximately 380 employees who use a cash drawer, or obtain a bank, each day at Monte Carlo.  Sims Dec. 5.

As explained by Mr. MacDonnell, the Beverage Department plays no role in creating the cash variance reports, which are received from the finance department, and from which disciplines are issued. Declaration of Michael MacDonnell ("MacDonnell Dec."), attached hereto as Exhibit 18 ¶ 8. Between March 2011 and August 23, 2013, forty (40) disciplines pertaining to variances have been issued to twenty bartenders in the Monte Carlo bartender department. *Id.* Importantly, everybody who handles a cash bank at Monte Carlos is held to the same cash variance policy. Sims Dec. 7.

In deposition, Van Biezen admitted to receiving and signing the following counseling notices for cash variances:

1.  February 27, 2004 (Exhibit 19; Van Biezen Depo. at 91:10-16);
2.  March 19, 2007 (Exhibit 20; Van Biezen Depo. at 92:21-93:6)
3.  October 15, 2007 (Exhibit 21; Van Biezen Depo. at 93:9-14)
4.  June 13, 2011 (Exhibit 22; Van Biezen Depo. at 79:17-81:4);
5.  June 26, 2011 (Exhibit 23; Van Biezen Depo. at 83:12-17);
6.  July 3, 2011 (Exhibit 24; Van Biezen Depo. at 81:9-15);
7.  September 16, 2011 (Exhibit 25; Van Biezen Depo. at 84:11-16);
8.  June 10, 2012 (Exhibit 26; Van Biezen Depo. at 93:15-20); and,
9.  October 22, 2012 (Exhibit 27; Van Biezen Depo. at 109:25-110:3).[6]

In Van Biezen's Charge, first filed on September 12, 2011, he claims he was issued three counseling notices due to cash variances in retaliation for protected activity. Exhibit 2 (page 1). Obviously, Van Biezen speaking about the counseling notices issued on June 13, June 26, and July 3, 2011. However, Van Biezen did not file his Charge until more than two months later in September 2011. *Id.* And, none of these individuals knew that Van Biezen had signed the Third Party Certification three years in September 2008. At that time, neither Mr. MacDonnell, nor Ryan Hink, nor Samantha Solich knew anything about Van Biezen's alleged claims of

---

[6]   Van Biezen testified under oath at deposition that three cash variance disciplinary notices issued to him, one in 2001 and two 2003 respectively, did not bear his signature. Van Biezen Depo. at 89:13-91:7. However, this was years before Van Biezen filed a charge of discrimination or signed a document suggesting he wanted to participate in the charge filed by another Monte Carlo employee. Exhibit 2.

discrimination.  MacDonnell Dec. ¶ 3; Declaration of Ryan Hink ("Hink Dec."), attached hereto as Exhibit 28, ¶ 3; Declaration of Samantha Solich ("Solich Dec."), attached hereto as Exhibit 29, ¶ 7.[7]

The same facts hold true from the counseling notice issued in September 2011.  Exhibit 25.  Not only did Mr. MacDonnell, Mr. Hink, and Ms. Solich know nothing about Van Biezen's protected activity at the time, Van Biezen could not identify the person who issued the discipline.  MacDonnell Dec. ¶ 3; Hink Dec. ¶ 3; Solich Dec. ¶¶ 7 and 10; Van Biezen Depo. at 84:20-23.

The only other disciplines for cash variance that occurred were in June and October 2012.  Exhibits 26 and 27.  Ms. Solich issued the June 2012 discipline, but knew nothing about Van Biezen's allegations at the time.  Solich Dec. ¶ 10; Van Biezen Depo. at 93:17-23.  Likewise, the October 2012 counseling was issued by Kledji Janllari, who knew nothing about Van Biezen's claims until asked to give a declaration in support of Monte Carlo's Motion for Summary Judgment.  Van Biezen Depo. at 110:7-14; Declaration of Klejdi Janllari ("Janllari Dec."), attached hereto as Exhibit 30 ¶ 3.

ii.  *Training On a Moscow Mule*

According to Van Biezen, Mr. MacDonnell, Monte Carlo's Beverage Director, ordered a Moscow Mule (a drink apparently comprised of vodka, lime juice and crushed ice), prepared by Van Biezen, sometime after June 2011, but obviously before he filed his Charge in September 2011 in which this event is mentioned.  Van Biezen Depo. at 55:24-56:16; 57:15-19; 59:11-14; Exhibit 2 (page 1).  The same day or the next day Mr. Hink, an Assistant Manager in Beverage, allegedly spent 15 to 20 minutes, including walking time to and from the bar at which Van

---

[7]   Van Biezen also claimed that the three June and July 2011 cash variance counselings were issued to him in retaliation for making a complaint to Monte Carlo Human Resources about Mr. MacDonnell possibly having harassed a female cocktail waitress.  This allegation, he stated was "outside" of the EEOC process.  Van Biezen Depo. at 103:18-104:4.  This event, testified by Van Biezen as occurring in June 2011, but proven by documentation, authenticated by Van Biezen, as occurring in September 2011 and not reported by Van Biezen until September 19, 2011, could not have prompted events three months prior in June and July 2011.  *Id.* at 105:1-6; *compare id.* at 116:25-117:15.

Biezen was stationed to another bar at which the training allegedly occurred, training Van Biezen on how to properly prepare a Moscow Mule. *Id.* at 56:10-16; 57:9-19; 59:11-24; 60:14-61:15. Van Biezen admits that Mr. MacDonnell was responsible for development of menus at Monte Carlo bars, the profitability of the Monte Carlo bars, and the quality control and Monte Carlo bars. Van Biezen Depo. at 59:25-60:13. Undisputed testimony shows that Mr. MacDonnell personally visits each Monte Carlo bar a minimum of twice a day, always before he leaves for the day, to observe their operations. MacDonnell Dec. ¶ 4. If Mr. MacDonnell observes any issues, whether with employees, customers, or engineering, he makes notes and texts his team so that the team can take immediate action to correct these issues. *Id.* This is a standard part of his daily routine. *Id.* Undisputed testimony also shows that neither Mr. Hink, nor Mr. MacDonnell, knew anything about Van Biezen's September 2011 Charge (which was not filed until after these events) or his participation three years earlier in 2008 in a charge of discrimination filed by Martinez. MacDonnell Dec. ¶ 3; Hink Dec. ¶ 3.[8]

        *iii.*    *Other Alleged Retaliation*

Van Biezen also claims that his break schedule was changed, he was required to work at a bar with three other bartenders, he was "watched," and that he was disciplined for leaving his bar unattended all in retaliation for engaging in protected activity, which consists of signing the

---

[8]     Van Biezen admits that he never spoke with Mr. MacDonnell about charges of discrimination. Van Biezen Depo. at 66:8-14. Van Biezen also admits he never spoke with Mr. Hink or Ms. Solich about any charge of discrimination filed. *Id.* at 66:15-20. None of these individuals ever asked Van Biezen about any charges of discrimination. *Id.* at 66:21-24.

Third Party Certification in September 2008 and filing his Charge in September 2011.[9]  There is simply no merit to these allegations as there is no evidence that Van Biezen was treated differently than anyone else or that there is a causal connection between these disciplines and Van Biezen's protected activity.

a.    The Schedule For <em>All</em> Bartenders Changed

With respect to changes in bartender schedules, Van Biezen testified that all shifts, for all bartenders have changed since April 2011 when Mr. MacDonnell became Beverage Manager at the Monte Carlo.  Specifically, Van Biezen stated:

> **Q:** Are you the only bartender you believe whose shifts have changed since Mr. MacDonnell -- I'm going to get his name right -- MacDonnell was hired?
> **A:** No.
> **Q:** Others have had shift change, too?
> **A:** Correct.
> **Q:** Do you know how shifts have changed since -- how bartender shifts have changed since Mr. MacDonnell has got there?
> **A:** Yes.
> **Q:** Describe to me what you know.
> **A:** Some bartenders -- most bartenders have been moved back an hour or two on swing shift.
> **Q:** Do you know if day or graveyard shift hours have changed?
> **A:** All shifts.

Van Biezen Depo. at 26:13-27:3.  It is unclear, given that all shifts, for all bartenders have changed since Mr. MacDonnell's arrival at Monte Carlo, on what basis Van Biezen contends he was targeted, treated differently or otherwise retaliated against for engaging in some protected activity about which Mr. MacDonnell knew nothing until 2012.  MacDonnell Dec. ¶ 3.

---

[9]    Van Biezen admits he made no complaints to Monte Carlo Human Resources that *he* was being harassed, discriminated against or retaliated against.  Van Biezen Depo. at 109:18-22.  As discussed in n. 6 above, Van Biezen did make one complaint in September 2011, that he believed a cocktail waitress had been harassed by Mr. MacDonnell.  Of course, Van Biezen admits that he observed an interaction between Mr. MacDonnell and the cocktail server, that the cocktail server never spoke to him about the event (*id.* at 107:6-8), he could not hear what was said between Mr. MacDonnell and the cocktail server (*id.* at 107:9-12), and that he never spoke to this cocktail waitress nor asked her anything about the events of that day.  *Id.* at 107:25-108:5.  Assuming this comprises part of Van Biezen's protected activity, there is no evidence that Mr. MacDonnell was ever made aware of this complaint.

b.   One Assignment By An Unknown Person Before There Was Knowledge of Protected Activity

Van Biezen claims that on *one* occasion he was assigned to work at a bar at which too many other bartenders were already assigned. Van Biezen Depo. at 111:6-11. Van Biezen believes (although he does not work with other Breaker Bartenders) that no one else has ever been assigned to a bar where more than one bartender had to use the same cash register despite the fact that there are two cash drawers in each register. Van Biezen Depo. 111:12-113:9. Van Biezen could not remember who assigned him to work with these other bartenders and could not pinpoint a date when this occurred, but admitted that this single event occurred before September 2011. Van Biezen Depo. at 113:22-114:17. Given that (1) there is no evidence that Mr. Hink, Ms. Solich or Mr. MacDonnell was the individual who assigned him to work at a bar in which he allegedly had to share a cash register with another bartender, (2) Mr. Hink, Ms. Solich and Mr. MacDonnell knew nothing about any charge or complaint of any kind made by Van Biezen before 2012, and (3) Van Biezen admits he never complained to anyone in a supervisory position at Monte Carlo about this assignment, there is nothing to causally connect this single event to a retaliatory motive. Van Biezen Depo. at 113:22-114:17, 115:12-24; MacDonnell Dec. ¶ 3; Hink Dec. ¶ 3; Solich Dec. ¶ 7.

c.   Watching Bartenders Is What Beverage Management Does

In Van Biezen's Charge, and in deposition, Van Biezen claimed he was being watched every day by every assistant beverage manager in the beverage department, including one named "Kevin" who started only two weeks before Van Biezen's deposition in January 2013. Van Biezen Depo. at 119:15-23; 128:16-19. Yet, Van Biezen admits that he "very rarely" sees Mr. MacDonnell, but believes that since Mr. MacDonnell arrived on property in April 2011 (about thirty-two (32) months before Van Biezen's deposition in January 2013), Mr. MacDonnell has watched him a total of 10 or 12 times. *Id.* at 129:15-24. As explained by Mr. MacDonnell,

however, he "personally visit each bar on the property a minimum of twice a day, generally at lunch and always before . . . [he] leave[s] for the day, to observe their operations." MacDonnell Dec. ¶ 4. This is a standard part of Mr. MacDonnell's routine as Director of Beverage. *Id.*

Upon further testing of Van Biezen's theory, he admitted that it was supposedly mostly watched by Eric Schloss and Samantha Solich. *Id.* at 130:9-14. However, as explained by Mr. Schloss, he does "rounds" of all Monte Carlo bars "multiple times every day." Declaration of Eric Schloss, attached hereto as Exhibit 31 ¶ 5. He does these "rounds" to check "for bar cleanliness, supply levels, and adequate staffing levels." *Id.* If a bar is particularly busy, Mr. Schloss will spend more time at that bar. *Id.* Mr. Schloss has "never been asked to watch any particular employee more closely or to single out any particular employee for observation." *Id.* ¶ 5. He has never done so. *Id.* Mr. Schloss first learned there was "some kind of lawsuit" in or around August 2012, but he does not know the specifics. *Id.* ¶ 4.

Ms. Solich likewise explains that, as an assistant beverage manager, her duties included training, supervising, coaching and counseling beverage department employees which were comprised of bartenders, cocktail waitresses, apprentice bartenders, and porters. Solich Dec. ¶ 3. On any given shift, Ms. Solich was typically responsible for the oversight of up to 150 beverage department employees. *Id.* ¶ 3. Ms. Solich walked the casino floor every day, and typically spent seven to eight hours of her day observing beverage department employees as there was no way to supervise, train, trouble shoot or coach employees from an office. *Id.* ¶ 4. Ms. Solich went to every bar on property four to five times a day and observed all bartenders and cocktail servers working during her shift, every shift she worked. *Id.* ¶ 5. Ms. Solich never watched one employee more than another, and was never told or requested to do so. *Id.* ¶ 4.

d.    There Is No Causal Connection Between Van Biezen's Discipline for Leaving A Bar Unattended And Protected Activity

It is undisputed that Van Biezen was disciplined in January 2012 for leaving his bar unattended by any bartender and in the hands of a cocktail server who was not permitted to make drinks behind the bar.  Van Biezen Depo. at 131:11-23; Solich Dec. ¶ 9.  It is undisputed that Ms. Solich issued a three day suspension to Van Biezen the day after this event occurred.  Van Biezen Depo. at 132:17-19; Solich Dec. ¶ 9.  It is undisputed that Van Biezen grieved this discipline through his Union and that the discipline was voided.  Van Biezen Depo. at 131:24-132:1.  Van Biezen believes this discipline was retaliatory "[b]ecause other bartenders leave bars, and this never happened to them."  *Id.* at 133:8-9.

What is missing from Van Biezen's analysis is any evidence of a causal connection between his discipline and protected activity.  As Ms. Solich explains:

> In the sixteen months I had been employed at Monte Carlo, I never heard of, saw or knew of any other bartender leaving his/her bar unattended by a bartender.  I was surprised Mr. Van Biezen would do such a thing and believe it was appropriate to issue discipline for his conduct.

> I understand Mr. Van Biezen contends that he was given this discipline in retaliation for complaining about discrimination; however, not only did I know nothing about any complaints of discrimination at the time, there was never any suggestion, let alone discussion of Mr. Van Biezen's discrimination concerns ever discussed during any meeting or in any conversation while I was part of the beverage department at Monte Carlo.

Solich Dec. ¶¶ 9 and 10.  Ms. Solich knew nothing about Van Biezen's protected activity until months after this event occurred.  *Id.* ¶¶ 7 and 10.

Mr. MacDonnell also confirms that since starting at Monte Carlo nine months prior, he had never seen any other bartender at Monte Carlo leave a bar unattended, and that he felt this was serious behavior warranting a serious discipline.  Supplemental Declaration of Michael MacDonnell, attached hereto as Exhibit 32 ¶ 4.  While Mr. MacDonnell learned of Van Biezen's

protected activity from the Vice President of Human Resources sometime in early 2012, Van Biezen's discipline was issued on January 21, 2012, before this information was shared with him. *Id.* ¶ 6.

## II.    Discussion

### A.    Van Biezen's Sex And Age Discrimination Claims Must Be Dismissed

#### i.    *Van Biezen did not exhaust sex or age discrimination claims*

Van Biezen cannot rely on his Charge to bring a sex or age discrimination claim because his Charge (as amended) alleged only retaliation.   Exhibit 2.   Well settled law holds that allegations not included in a plaintiff's administrative charge "may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002) (internal quotations omitted).   Case law also makes clear that exhaustion of a retaliation claim does not provide the basis for the court to hear an age or sex discrimination claim. *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (the specific claims made in court ordinarily must be presented to the EEOC and jurisdiction "depends on the scope of the EEOC charge and investigation"); *Thompson v. Trident Seafoods Corp.*, No. C11-0120RSL, 2012 U.S. Dist. LEXIS 53136 * 3-5 (W.D. Wash. April 16, 2012) (Plaintiff failed to exhaust administrative remedies for sex discrimination claim when her charge was directly related to retaliation); *Fundukian v. United Blood Services*, No. 00-15949, 2001 U.S. App. LEXIS 19831 (9th Cir. August 31, 2001); *Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 258 (7th Cir. 1996) (retaliation and age not generally reasonably related).

Here, a review of Van Biezen's Charge shows absolutely no reference to sex or age. Exhibit 2.   Rather, he is explicit about various types or retaliation he allegedly suffered.   *Id.*

Accordingly, Van Biezen's Charge, which does not mention sex or age discrimination, cannot be the basis upon which he sues Monte Carlo for age or sex discrimination claim and these claims must be dismissed.

ii.    *Van Biezen cannot piggyback onto Martinez's Charge*

The law also makes clear that Van Biezen cannot piggyback onto Martinez's Charge for purposes of bringing an age or sex discrimination claim. It is undisputed that Van Biezen filed a Charge and amended a Charge with the EEOC. Exhibit 2. It is also undisputed that Van Biezen's Charge, as amended, alleged retaliation only. *Id.* Van Biezen cannot now expand his claims to include allegations he did not raise with the EEOC by piggybacking onto Martinez's Charge. "An individual who has previously filed an EEOC charge cannot piggyback onto someone else's EEOC charge." *Holowecki v. Federal Exp. Corp.*, 440 F.3d 558, 564 (2nd Cir. 2006) (citations omitted). The Second Circuit explains that, "[a]s noted by other Circuit Courts of Appeals, allowing an individual who has previously filed a charge to abandon that charge and piggyback onto the charges of another individual would too often frustrate the EEOC's statutorily-mandated efforts to resolve an individual charge through informal conciliation." *Id.* at 565 (citations omitted); *see also Bannister v. Wal-Mart*, No. 4:11-CV-94-BO, 2012 U.S. Dist. LEXIS 18643 *16-18 (E.D.N.C. February 15, 2012)(listing other cases so holding; *Cargo et al. v. Kansas City Southern*, No. 05-2010, 2009 U.S. Dist. LEXIS 84625 *5-6 (W.D. La. September 16, 2009)("[a]n employee who files a charge but fails to assert a particular allegation in his charge . . . "has necessarily excluded himself from the class of persons purportedly covered by the charge of another.") (citations omitted); *see also Anderson v. Unisys Corp.*, 47 F.3d 302, 309 (8th Cir. 1995) ("once they file separate administrative charges, they cannot rely any further on the other claimant's actions and must timely file suit *after* receiving their right-to-sue letters")

(emphasis added). The Second Circuit repeated this reasoning more recently in *Johnson v. Locke*, No. 10-CV-3105 (FM), 2011 U.S. Dist. LEXIS 27868 *29 (S.D.N.Y. March 14, 2011).

When Van Biezen filed his Charge, and then amended it, he did so knowing that there were numerous claims of discrimination he could raise. Exhibit 2. He chose to raise retaliation only. *Id.* By filing his own Charge and electing not to make claims of sex or age discrimination, Van Biezen has excluded himself from any sex or age discrimination claim before the Court. Monte Carlo should not now be burdened with allegations never actually alleged by Van Biezen. For this reason alone, Van Biezen's sex and age discrimination claims must be dismissed.

**B.    Van Biezen's Bankruptcy Bars His Sex And Age Discrimination Claims**

If Van Biezen's sex and age discrimination claims are not barred due to his failure to exhaust administrative remedies and/or because he cannot piggyback onto Martinez' Charge of Discrimination, these claims are nonetheless barred and must be dismissed because he failed to disclose these claims in his Bankruptcy Petition.

Judicial estoppel "precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996). When deciding whether to apply judicial estoppels in a particular case, courts generally consider: "(1) whether a party's position in the later judicial proceeding is clearly inconsistent with that party's earlier position; (2) whether the party persuaded the first court to accept the earlier position, so that judicial acceptance of an inconsistent position is a later proceeding would create the perception that one of the two courts was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not stopped." *Banuelos v. Waste Connections, Inc.*, No. 1:12-cv-1012 AWI SAB, 2013 U.S. Dist. LEXIS 13810 *6-7 (E.D. Cal. Jan. 31, 2013) *citing Milton H. Greene Archives v. Marilyn*

*Monroe LLC*, 692 F.3d 983, 994 (9th Cir. 2012).  Further "[j]udicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset."  *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001).

Here, Van Biezen filed for bankruptcy protection on March 6, 2009.  Exhibit 4.  This was more than five months after he signed the Third Party Certification with the EEOC on September 29, 2008.  Exhibit 9.  However, on March 6, 2009, Van Biezen stated under penalty of perjury in Schedule B, section 21, that he had no contingent or unliquidated claims.  Exhibit 4 at 12, 26, and 28.  Van Biezen also signed a statement of Financial Affairs under penalty of perjury stating that he was not a party of any administrative proceedings filed within a year of his bankruptcy petition.  *Id.* at 34.  On July 27, 2009, Van Biezen again stated under penalty of perjury on his amended Schedule B that he had no contingent or unliquidated claims.  Exhibit 5 at 1 and 3.

Since filing his Bankruptcy Petition, despite the fact that the instant case has been pending for approximately a full year, Van Biezen has not amended his petition to disclose to his creditors the existence of his claims, despite the fact that the reorganization plan confirmed by the Court does not appear to provide for payment of any amounts to unsecured creditors.  Exhibits 4, 5 and 6; Exhibit 10.  These facts, when viewed in light of clear law, demonstrate that Van Biezen's sex and age discrimination claims must be dismissed.  *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006); *Browning Mfg. v. Mims (In re: Coastal Plains, Inc.)*, 179 F.3d 197 (5th Cir. 1999); *Banuelos v. Waste Connections, Inc.*, No.1:12-CV-1012 AWI SAB, 2013 U.S. Dist. LEXIS 13810 *10 (E.D. Cal. Jan. 31, 2013).  In fact, as explained in *Banuelos*, permitting Van Biezen to pursue his sex and age discrimination claims:

> would work violence against the integrity of the bankruptcy
> process.  The bankruptcy system depends upon full and honest

> disclosure by debtors, including disclosure of their contingent and unliquidated claims. *See Hamilton*, 270 F.3d at 785. The interests of creditors and the Bankruptcy Court are impaired when an incomplete disclosure is made. *See id.*; *In re Coastal Plains*, 179 F.3d at 208. If this case were to proceed, it would reward the failure to fully disclose assets. Such a result would be improper and unfair. *See id.*

*Id.* Van Biezen was not candid with the Bankruptcy Court when he failed, amended, and continues to fail to disclose his claims against Monte Carlo. For this reason alone, Van Biezen's sex and age discrimination claims must be dismissed.

> **C.   Van Biezen Cannot State A Prima Facie Case Of Sex Discrimination, But Even If He Does, There Is No Evidence Of Pretext**

To state a prima facie claim of sex discrimination under Title VII, a plaintiff must show that he belongs to a protected class; he was qualified for the position; he was subject to an adverse employment action; and, similarly situated employees outside his protected class were treated more favorably than he was. *Hawn v. Exec. Jet Mgmt.*, 615 F.3d 1151, 1156 (9th Cir. 2010). Thereafter, and assuming the Court finds the plaintiff establishes a *prima facie* case of employment discrimination, the burden shifts to the defendant to "provide a legitimate, non-discriminatory reason for the employment action" complained of. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). The defendant need offer only reasons that, *"taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993) (emphasis in original). The burden then shifts back to the plaintiff to show the articulated reasons for an adverse action was pretextual. *Vasquez*, 349 F.3d at 641. Van Biezen must produce evidence that demonstrates discrimination directly, by showing that discrimination more likely motivated the employer, or indirectly using "specific and substantial evidence challenging the credibility of the employer's motives." *Id.*; *Coughlan v. American Seafoods Company, LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005). In determining whether the employer's proffered reasons for termination was pretext,

courts "only require that an employer honestly believe its reason for its actions, even if its reason is foolish or trivial or even baseless." *Villarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1063 (9th Cir 2002) (citation and internal quotations omitted). Here, there is no direct evidence of discriminatory animus.[10]    Thus, Van Biezen must establish a circumstantial case of discrimination, which he cannot do.

Van Biezen cannot establish his current employer, who hired him and continues to employ him, treated him any differently than any other employee with respect to his employment because of sex. Van Biezen was male when hired by Monte Carlo. He is male today, and remains employed by Monte Carlo. With respect to Diablo's, it is undisputed that Monte Carlo played no role whatsoever in Diablo's hiring process and, thus, did not fail to hire or play any role in the failure to hire Van Biezen. MacDonnell Depo. at 154:4-8; 154:23-155:6; 155:10-18; 156:5-10; Ohanian Depo. at 33:20-34:1; 35:10-36:5; 57:11-59:9; 60:3-8; 60:23-61:12; 82:13-16; 89:17-25; 100:2-7; 106:9-11. Indeed, it is undisputed that Van Biezen did not appear for the interview scheduled for him at Diablo's and thus disqualified himself from consideration for a position. Van Biezen Depo. at 48:12-14; 155:9-22. It is also undisputed that other than signing a single bid sheet for Diablo's, Van Biezen never sought employment at Diablo's again. *Id.* at 48:8-14; 153:10-12.

There is not one shred of evidence that Monte Carlo treated anyone more or less favorably than Van Biezen. There is also not one shred of evidence, in contrast to Van Biezen's personal belief, that others, outside Van Biezen's class, were offered a variety of interview times or were hired without completing an interview. Thus, no matter how firmly Van Biezen may disagree with the hiring process at Diablo's, this is not evidence of discrimination. In fact, anti-

---

[10]    Direct evidence demonstrates discriminatory animus "without inference or presumption." *See Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1141-1143 (9th Cir. 2001) (*citing Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998)). Circumstantial evidence "must be specific and substantial in order to survive summary judgment." *Id.* at 1142.

1   discrimination laws do not allow an employer's business decisions to be second-guessed. *See*

2   *e.g., Sharpe v. AT&T*, 66 F.3d 1045, 1050 (9th Cir. 1995) ("We have long held that

3   discrimination laws are 'not intended as a vehicle for general judicial review of business

4   decisions.'") quoting *Douglas v. Anderson*, 656 F.2d 528, 535 (9th Cir. 1981). Importantly, an

5   employee's mere subjective disagreement with a personnel decision is not evidence of

6   discrimination. *O'Connor v. DePaul University*, 123 F.3d 665, 670 (9th Cir. 1997); *see also*

7   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (plaintiff must

8   "do more than simply show that there is some metaphysical doubt as to the material facts").

9

10      Moreover, with respect to Diablo's (where Van Biezen did not interview), offers were

11   made to two bartenders who signed the same bid sheet signed by Van Biezen, including John

12   Peterson then 51 years old, and Ozzie Ahmad then 44 years old. Exhibit 16; Gil Dec. ¶¶ 9-10;

13   Dkt. # 43 at 6-7 ¶ 16 and citations therein. Peterson accepted the position and still holds it to this

14   day, but Ahmad ultimately elected to not take the position. *Id.* Given these facts, it is obvious

15   that sex and age did not impact Monte Carlo's decision to forward names of eligible bartenders to

16   Diablo's, and it did not stop Diablo's from making offers to male Monte Carlo employees.

17

18      With respect to Brand, Monte Carlo forwarded his name, along with numerous other

19   individuals who bid. Ohanian Depo. at 43:6-12. And, while Monte Carlo does not dispute that

20   Van Biezen did not receive an offer from Brand on the one occasion he applied, it is undisputed

21   that Monte Carlo played no role whatsoever in Brand's hiring process and, thus, did not fail to

22   hire him. MacDonnell Depo. at 154:9-156:10; Ohanian Depo. at 35:10-12; 35:24-36:3; 100:2-

23   101:10. Evidence also shows that two male bartenders who applied (Ted Paiz and David Rahn)

24   were offered positions by Brand. MacDonnell Depo. at 137:2-15; Gil Dec. ¶ 6.

25      Given these undisputed facts, it is unclear how Van Biezen can establish that he was

26   treated less favorably than women by Monte Carlo. For this reason alone, Van Biezen cannot

27

28

1    establish a prima facie case of discriminatory failure to hire against Monte Carlo. *Leong*, 347

2    F.3d at 1124; *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018 (9th Cir. 2006); *Wheeler v.*

3    *Chertoff*, No. C08-1738 SBA, 2009 U.S. Dist. LEXIS 61799 *16-18 (N.D. Cal. July 16, 2009)

4    (plaintiff cannot establish a *prima facie* case of age or sex discrimination where the plaintiff

5    failed to show that other similarly situated employees were treated more favorably).

6
7        Assuming, for argument sake only, that Van Biezen argues that Monte Carlo should

8    somehow be responsible for Brand's decision, the decision shows that it was based purely on

9    qualifications. According to those who conducted the interviews (of which there were at least

10   two), Van Biezen could not identify wines or grape varietals, Van Biezen concedes he has

11   trouble with wine questions, he was unable to answer questions regarding single malt scotch, his

12   liquor knowledge was below what Brand was seeking, and he had no marketing skills. Exhibits

13   12 and 13 (Van Biezen's Brand Interview Guide) at LG 00059 and 00069; MacDonnell Depo. at

14   139:5-140:3, 141:9-142:3, 143:22-144:10, 145:20-22; Van Biezen Depo. at 167:7-9; *see also*

15   The Light Group's Motion For Summary Judgment on Claims Asserted by Cary Van Biezen

16
17   (Dkt. # 43) at 6-7 ¶ 16 and citations therein. And, as explained by MacDonnell, who was

18   Director of Beverage for Light Group at the time, Brand was a "free pour" establishment.

19   MacDonnell Depo. at 127:10-15. Bartenders at Brand would not be using a jigger or other

20   measuring device for purposes of pouring liquor. *Id.* at 125:11-13. Van Biezen understood that

21   he would have to pass a pour test in order to be considered for hire at Brand, and Van Biezen

22
23   scored a 3 out of 14. Van Biezen Depo. at 163:12-21. Van Biezen has no evidence whatsoever

24   that individuals outside his protected class were hired with poor interview results and failing

25   pour test scores. In fact, given that Mr. Paiz, the same age as Van Biezen was offered a position

26   in May 2008, and that David Rahn, then an employee of Diablo's was offered a position at the

27   same time, there is simply nothing that supports a reasonable conclusion that sex played any role

28

in the decisions made a Brand at the time Van Biezen applied.[11]   It is Van Biezen who must

present evidence, something more than a metaphysical doubt, to create a question of fact.

*Wheeler*, 2009 U.S. Dist. LEXIS 61799 *8 (if evidence is "merely colorable, or in not

significantly probative, summary judgment may be granted); *Matsushita*, 475 U.S. at 586.   He

cannot do so and, as such, Van Biezen's sex discrimination claim fails.

> **D.     Even If Not Barred, Van Biezen Fails To Establish An Age Discrimination Claim**

A plaintiff establishes a prima facie case of intentional discrimination under the ADEA if

he demonstrates that he is over 40, he applied for a position for which he was qualified, and that

a younger person with similar qualifications received the position. *Cotton v. Alameda*, 812 F.2d

1245, 1248 (9th Cir. 1987).   "However, [u]nlike Title VII, the ADEA's text does not provide that

a plaintiff may establish discrimination by showing that age was simply a motivating factor."

*Gross v. FBL Fin. Servs.*, 557 U.S 167, 174 (2009).   Rather, Van Biezen, must prove by a

"preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for'

cause of the challenged employer decision." *Id.* at 177-178.

Van Biezen cannot establish that age discrimination was the "but for" reason for any act

by Monte Carlo.   The undisputed facts are overwhelming in that regard.   With respect to Diablo's

Van Biezen testified that the only evidence he has that age played a role in the failure to be hired

was not "none of . . . [his] peers were hired that were over 40."   Van Biezen Depo. at 160:24-

161:4.   In fact, Van Biezen admitted in deposition that the entirety of his evidence to the contrary

was his supposed observation:

> **Q:**     So you're claiming age and sex discrimination in this case;
>            is that right?
> **A:**     I am.
> **Q:**     What evidence do you have of age discrimination?
> **A:**     That no bartenders were hired over 40.   Male bartenders.

---

[11]     Gil Dec. ¶ 6; Exhibit 16; MacDonnell Depo. at 136:15-137:12.

| | |
|---|---|
| **Q:** | No male bartenders over 40? |
| **A:** | Correct. |
| **Q:** | And that's at Diablo's, Brand, or both? |
| **A:** | Both places. Both establishments. |

***

| | |
|---|---|
| **Q:** | What steps did you take to reach the conclusion that no male bartenders over 40 had been hired at either establishment? |
| **A:** | Very observant. |

Van Biezen Depo. at 176:1-11; 176:15-18.

However, Van Biezen's observations led him to patently false conclusions. Mr. Peterson was hired at age 51 and Mr. Ahmad was offered a position at age 44. Gil Dec. ¶¶ 9 and 10; Exhibit 16; Dkt. 43 at 6-7 ¶ 16. With respect to Brand, Van Biezen bid once in March 2008, when he was 45 years old, and Monte Carlo forwarded his name to Brand along with numerous other individuals who bid at the same time. Ohanian Depo. at 43:6-12; Van Biezen Depo. at 72:16-17 (testifying he was born in 1963); 50:1-2 (stating he was interviewed at Brand). Brand, which based its decisions purely on legitimate criteria on which all interviewees were judged, made offers to two men, David Rahn and Ted Paiz, who was 43 at the time. Gil Dec. ¶ 6; MacDonnell Depo. at 137:2-15; Exhibit 16. Given these plain and undisputed facts, Van Biezen's claim of age discrimination must fail. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

**E.    Van Biezen's Claim For Retaliation Fails**

To establish a prima facie claim of retaliation under Title VII, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (citing *Payne v. Norwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997)). It is Van Biezen's burden to prove, by a

preponderance of the evidence, the essential element of a causal link that the adverse action was taken "because" of the protected activity. *Poland v. Chertoff*, 494 F.3d 1174, 1181 n.2 (9th Cir. 2004); 42 U.S.C. § 12203(a).   Importantly, absent evidence of a causal connection between protected activity and an action complained of by Armstrong, his claim or retaliation fails. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 797 (9th Cir. 1982) (when the decision maker about whom the Plaintiff complains does "not know that . . . [the plaintiff] had engaged in a protected activity . . . the requisite causal link between the decision" and the protected activity is broken); *Carrasco v. San Ramon Valley Unified Sch. Dist.*, 258 Fed. Appx. 114, 116 (9th Cir. 2007) (affirming summary judgment in defendant's favor on plaintiff's retaliation claim where plaintiff failed to present any evidence that the defendant was aware of her involvement in a protective activity); *Raad v. Fairbanks N. Star Borough*, 323 F.3d 1185, 1197 (9th Cir. 2003) (same). Thus, setting Van Biezen's personal belief that he suffered retaliation, he must produce *evidence* that engaging in protected activity was the "but for" reasons motivating the adverse actions about which he complains. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, __ U.S. __, __, 133 S. Ct. 2517, 2533 (2013).

Van Biezen's disciplines for cash variances were given in accordance with Monte Carlo policy, applicable to all Monte Carlo employees who carry cash banks, and were issued by individuals who had no knowledge that Van Biezen had engaged in any protected activity.  Sims Dec. ¶¶ 2 and 7; Hink Dec. ¶ 3; Solich Dec. ¶ 7; Janllari Dec. ¶ 3. Indeed the three cash variances disciplines issued in June and July 2011 occurred almost three years *after* Van Biezen signed the Third Party Certification, and before Van Biezen filed his Charge in September 2001. *Compare* Exhibits 22-24 to Exhibits 2 and 9.  The three year gap between signing the Third Party Certification and these disciplines clearly creates significant doubt as to a causal chain, especially in light of the uncontested testimony by the management employees who issued the

disciplines evidencing no knowledge of protected activity at the time.  MacDonnell Dec. ¶ 3; Solich Dec. ¶ 7; Hink Dec. ¶ 3; *Clark County School Dist. v. Breeden*, 532 U.S. 268, 273-274 (2001) (temporal proximity between an employer's knowledge of protected activity and an adverse employment action must be "very close" in order to be sufficient evidence of causality). Moreover, as explained by Mr. MacDonnell, forty (40) disciplines for cash variances have been issued to twenty (20) different bartenders since he joined Monte Carlo as its Beverage Manager. MacDonnell Dec. ¶ 8; Sims Dec. ¶ 8.  While Monte Carlos does not dispute that Van Biezen may believe he received cash variance disciplines in retaliation for some protected activity, there is simply no evidence to support this conclusion.  *Cohen*, 686 F.2d at 797 (when the decision maker about whom plaintiff complains does not know that plaintiff engaged in protected activity, "the requisite causal link between the decision" and the protected activity is broken).

Likewise, Van Biezen's claim regarding a one-time training, lasting 15 to 20 minutes, including walking time, on how to make a Moscow Mule, occurred sometime between June and September 2011.  Van Biezen Depo. at 55:24-56:16; 57:9-13; 59:11-24; Exhibit 2 (page 1). However, neither Mr. Hink (who allegedly trained Van Biezen) nor Mr. MacDonnell (whom Van Biezen states prompted the training), knew anything about Van Biezen's protected activity until 2012, months after this training occurred.  Hink Dec. ¶ 3; MacDonnell Dec. ¶ 3.  Absent knowledge of protected activity by the alleged retaliator, there can be no causal connection between such activity and Van Biezen's training.  *Cohen*, 686 F.2d at 797.  Thus, Van Biezen's claim that he was trained on one occasion on how to make a Moscow Mule in retaliation for

engaging in protected activity fails as a matter of law.[12]   *Raad*, 323 F.3d at 1197 (granting summary judgment for defendant on plaintiff's retaliation claim where plaintiff failed to point to any evidence that individuals who made the alleged retaliatory decision were aware of plaintiff's complaints).

Van Biezen also claims that he was "watched" continuously by every beverage manager on property.  Van Biezen Depo. at 119:15-23; 128:16-19.  However, Mr. MacDonnell, Mr. Schloss, and Ms. Solich all testified that observing bartenders and bar operations is a big part of their jobs.  MacDonnell Dec. ¶ 4; Schloss Dec. ¶ 5; Solich Dec. ¶¶ 4-6.  Van Biezen says, of course, that he was observed more than anyone else, but other than vague references to hearsay (what others supposedly told him), he has no evidence that this, in fact, occurred.[13]   However, the Court may only consider evidence on summary judgment that would be admissible if presented at trial.  Fed. R. Civ. P. 56; *Ballen v. City of Redmond*, 466 F.3d 736, 745 (9th Cir. 2006) (citations omitted).  Classic hearsay evidence, testimony of a third party offered for the truth of the matter asserted (others telling Van Biezen he was being watched), is not admissible evidence.  *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179, 1181-1183 (9th Cir. 1988).  In light of the overwhelming evidence that Monte Carlos beverage management was simply doing its job by observing bartenders, and that there is no evidence Van Biezen was observed more than anyone else (in contrast to Van Biezen's personal belief and hearsay statements which are

---

[12]     Van Biezen's claim that his schedule was changed in retaliation for engaging in protected activity also fails because he clearly admits that the schedules changed for all bartenders after Mr. MacDonnell joined Monte Carlo as its Beverage Manager.  Van Biezen Depo. at 26:13-27:3.  In similar fashion, Van Biezen contends that on one occasion someone, he's not sure who, assigned him to work with other bartenders resulting in him sharing a cash register.  Van Biezen could not pinpoint a date when this occurred, but admitted that this single event occurred before September 2011.  Van Biezen Depo. at 111:6-11; 113:22-114:17.  There is no evidence that Mr. Hink, Ms. Solich or Mr. MacDonnell assigned Van Biezen to work at a bar in which he had to share a cash register.  The evidence shows Mr. Hink, Ms. Solich and Mr. MacDonnell knew nothing about any charge or complaint of any kind made by Van Biezen before 2012.  Hink Dec. ¶ 3; Solich Dec. ¶ 7; MacDonnell Dec. ¶ 3; *Cohen*, 686 F.2d at 797; *Raad*, 323 F.3d at 1197.

[13]     Van Biezen Depo. at 117:22-119:7.

not evidence), Van Biezen cannot establish a question of fact sufficient to defeat summary judgment. *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986).

Finally, Van Biezen alleges that he was disciplined in January 2012 after leaving his bar unattended, and in the hands of a cocktail server, in retaliation for engaging in protected activity. Mr. MacDonnell, who had been at Monte Carlo about nine months at the time, had never encountered a bartender doing so.  Supplemental MacDonnell Dec. (Exhibit 32) ¶ 4.  He also knew nothing about Van Biezen's protected activity at the time of the discipline. *Id.* ¶ 6.  Ms. Solich also explained that: "I understand Mr. Van Biezen contends that he was given this discipline in retaliation for complaining about discrimination; however, not only did I know nothing about any complaints of discrimination at the time, there was never any suggestion, let alone discussion of Mr. Van Biezen's discrimination concerns ever discussed during any meeting or in any conversation while I was part of the beverage department at Monte Carlo." Solich Dec. ¶ 10.  Absent a causal connection between this event and knowledge of protected activity, even if an event with which Van Biezen vehemently disagrees, Van Biezen cannot establish the critical causal link necessary to establish retaliation. *Cohn*, 686 F.2d at 797; *Raad*, 323 F.3d 1197.

## III.   Conclusion

Monte Carlo is entitled to summary judgment on each and all of Van Biezen's claims.  He cannot raise sex or age discrimination claims as a matter of law because he failed to exhaust administrative remedies; he cannot piggyback on the claims of his co-plaintiff Martinez; and he failed to include these claims in his bankruptcy filing.  Further, Van Biezen cannot establish a prima facie case of sex discrimination and has no evidence of pretext.  Likewise, Van Biezen cannot establish that "but for" his age, employment decisions about which he complains would have come out differently.  Finally, Van Biezen's retaliation claims fail.  There is no evidence of a causal connection between any protected activity by Van Biezen and the actions about which

1    he complains.  For each and all of these reasons, Monte Carlo requests the Court grant summary

2    judgment in its favor and against Van Biezen on all of Van Biezen's claims.

3         Respectfully submitted this 12th day of September, 2013.

4                                             JACKSON LEWIS LLP

5

6

7                                             /s/ Elayna J. Youchah
                                        Elayna J. Youchah, Bar # 5837
8                                       Ethan D. Thomas, Bar # 12874
                                        3800 Howard Hughes Parkway, Suite 600
9                                       Las Vegas, Nevada  89169

10                                      *Attorneys for Defendant Victoria
                                        Partners dba Monte Carlo*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JACKSON LEWIS LLP
   LAS VEGAS

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Jackson Lewis LLP and that on this 12th day of September, 2013, I caused to be served a true and correct copy of the above and foregoing **DEFENDANT VICTORIA PARTNERS' MOTION FOR SUMMARY JUDGMENT AS TO CARY VAN BIEZEN** via ECF Filing, properly addressed to the following:

R. Tomas Olmos
ALLRED MAROKO & GOLDBERG
6300 Wilshire Blvd., Ste. 1500
Los Angeles, California 90048

M. Lani-Esteban-Trinidad
ESTEBAN-TRINIDAD LAW, P.C.
4315 N. Rancho Dr., Ste. 110
Las Vegas, Nevada 89130

*Attorneys for Plaintiffs*

Scott M. Mahoney
Anthony B. Golden
FISHER & PHILLIPS LLP
3800 Howard Hughes Parkway
Suite 950
Las Vegas, Nevada 89169

*Attorneys for Defendant Light Group*

_____/s/ Emily Santiago_____
Employee of Jackson Lewis LLP

JACKSON LEWIS LLP
LAS VEGAS

-31-