Elayna J. Youchah, Bar No. 5837
youchahe@jacksonlewis.com
Ethan D. Thomas, Bar No. 12874
ethan.thomas@jacksonlewis.com
**JACKSON LEWIS LLP**
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Tel: (702) 921-2460
Fax: (702) 921-2461

*Attorneys for Defendant Victoria Partners*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| PABLO MARTINEZ, TYRONE ARMSTRONG, CARY VAN BIEZEN and DANIEL ATKINSON,<br><br>Plaintiffs,<br><br>v.<br><br>VICTORIA PARTNERS dba as MONTE CARLO RESORT AND CASINO; THE LIGHT GROUP dba DIABLO'S CANTINA, LLC and MC STEAK, LLC; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:12-cv-00502-JAD-VCF<br><br><br>**DEFENDANT VICTORIA PARTNERS' MOTION FOR SUMMARY JUDGMENT AS TO PABLO MARTINEZ' CLAIMS** |

Defendant Victoria Partners dba Monte Carlo Resort and Casino ("Monte Carlo") moves for summary judgment in its favor and against Plaintiff Pablo Martinez ("Martinez"). Martinez's Complaint asserts three causes of action including sex discrimination, age discrimination, and retaliation. Summary judgment is appropriate as to all of Martinez's claims asserted because (1) Martinez is barred from bringing any claim for age and sex discrimination related to hiring at Brand; (2) Martinez cannot establish prima facie cases of sex or age discrimination; (3) if Martinez is able to establish prima facie cases of discrimination, there is no evidence of pretext or that Martinez's age was the but-for cause of him not being hired; and (4) there is no evidence that Martinez suffered any form of retaliation. For each and all of these reasons, discussed more fully

below, Monte Carlo asks that summary judgment be granted in its favor on all of Martinez's claims.

This Motion is based upon Fed. R. Civ. P. 56, the following Memorandum of Points and Authorities, the exhibits attached hereto (including authentication declarations) and such other argument of counsel as the Court may wish to consider.

Dated this 16th day of September, 2013.

JACKSON LEWIS LLP

/s/ Elayna J. Youchah
Elayna J. Youchah, Bar No. 5837
Ethan D. Thomas, Bar No. 12874
3800 Howard Hughes Parkway Suite 600
Las Vegas, Nevada 89169

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.     **BACKGROUND FACTS**

A.     **Martinez's Employment at Monte Carlo**

Martinez was hired by Monte Carlo as a full time bartender in June 1996. Deposition of Pablo Martinez ("Martinez Depo."), attached hereto in relevant part as Exhibit 1 at 11:18-20, 13:15-17. Martinez is still employed by Monte Carlo and has always been full time. *Id.* at 11:15-17, 13:20-21. Martinez testified in his deposition that he likes his shift, the bar to which he is assigned, and that he feels secure in his employment at Monte Carlo. *Id.* at 111:11-12, 115:18-21.

Martinez is a member of the Bartenders Union (the "Union"), and has been throughout his entire employment with Monte Carlo. *Id.* at 12:19-24. It is undisputed that as a Union member and employee of Monte Carlo, Martinez's pay and the conditions of his employment with Monte Carlo are controlled by a Collective Bargaining Agreement ("CBA") between the Union and Monte Carlo. *Id.* at 19:11-15; 111:1-5.

### B. Martinez's Claims Relating to Diablo's Cantina and Brand Steakhouse

#### i. Hiring Process at Diablo's and Brand[1]

As explained and supported fully below, Monte Carlo played no role in any Diablo's or Brand hiring decisions.[2] Deposition of Sherri Ohanian ("Ohanian Depo."), attached hereto as Exhibit 2 at 33:20-34:1; 35:10-36:5; 60:3-8; 92:18-93:2; 100:2-101:10; Deposition of Michael MacDonnell ("MacDonnell Depo."), attached hereto as Exhibit 3 at 154:4-156:10.[3] Monte Carlo did not create the job descriptions for the positions at Diablo's. Ohanian Depo. at 106:9-11. Monte Carlo conducted no training for The Light Group employees who conducted the interviews. Id. at 89:5-16. No Monte Carlo Human Resources employees were present at the interviews; no members of Monte Carlo management took part in the interview process; and Monte Carlo employees had no input in the hiring timeline at Diablo's and Brand. Id. at 57:11-59:9, 60:3-9; 60:23-61:12; MacDonnell Depo. at 154:4-156:10.[4] All of the interviewers involved in the hiring process were The Light Group representatives. MacDonnell Depo. at 154:4-156:10; Ohanian Depo. at 58:9-11, 82:13-16. Indeed, MacDonnell's testimony on the subject is clear:

---

[1]   It is undisputed that Monte Carlo entered into a Restaurant Management Agreement with Diablo's Cantina, LLC dba Diablo's Cantina ("Diablo's") whereby Diablo's opened, operated, and managed this separately incorporated entity located inside the Monte Carlo. See Defendant The Light Group's Motion for Summary Judgment on Claims Asserted by Pablo Martinez (Dkt # 58) at 2 ¶ 1 and citations therein. Monte Carlo entered into a similar agreement with MC Steak, LLC dba Brand Steakhouse ("Brand"). Id. at 3 ¶ 2.

[2]   Light Group was opening a union restaurant and was therefore subject to the CBA. Ohanian Depo. at 38:1-2. As such, and consistent with the CBA, Monte Carlo held informational meetings and posted bid sheets for Monte Carlo employees. Id. at 34:5-11. The Light Group distributed material (Id. at 42:3-7) and, after bid sheets were posted, qualified individuals were contacted for purposes of setting up applications and interviews. Id. at 42:12-16.

[3]   Michael MacDonnell was hired by Monte Carlo on April 11, 2011. MacDonnell Depo. at 18:10-17. He was employed as the Director of Beverage at The Light Group from approximately April 2007 to May 2008, when he moved to Florida. Id. at 19:22-20:17.

[4]   Martinez says he recalls a then Vice President of Food and Beverage, Rick Goldstein, being present during the first round of interviews and his pour test at Diablo's, but Martinez admits that no other Monte Carlo employee was present, and he does not contend that Mr. Goldstein was interviewing employees. Martinez Depo. at 31:19-32:11, 32:16-21, 34:1-6. Martinez also admits that he was never informed that Mr. Goldstein had any role in the decision making process at Diablo's. Id. at 34:20-24. In fact Martinez admits that he has no knowledge of who made the hiring decisions at Diablo's. Id. at 34:25-35:5, 35:13-23. In contrast, Ms. Ohanian testified that she was not aware of Mr. Goldstein attending any interviews, and that she has never been given any information from Mr. Goldstein or anyone else that indicated he was present for the interviews or pour testing at Diablo's. Ohanian Depo. at 58:15-59:9, 119:17-120:11; see also MacDonnell Depo. at 154:4-156:10.

1
2

**Q:** At any time while you were involved in the hiring of bartenders at Diablo's, did Monte Carlo employees play any role in that process that you recall?

3
4

**A:** No.
**Q:** And at any time that you were involved in the hiring process at Brand, did any Monte Carlo employee play any role in the hiring process at that venue?

5

**A:** Not one.

6

MacDonnell Depo. at 154:4-16.

7

    *ii.*    *Martinez Was Not Selected for a Position at Diablo's*

8
9
10
11

First in July, and then again in September 2007, Monte Carlo posted bid sheets giving Monte Carlo employees the opportunity to apply for employment at Diablo's. Ohanian Depo. at 34:5-11, 114:8-11; Exhibits 4 and 5. Martinez did not bid in July because, as he explains, he was

12

waiting to see if Diablo's was opening as a Union venue. Martinez Depo. at 212:4-15; 213:21-

13

214:8. Martinez was not interested in going to a venue that was not covered by the CBA because

14

it provides safeguards that were important to Martinez. *Id.* at 213:21-214:8, 214:16-215:1, 244:4-

15

8.

16
17
18

The Diablo's bid sheet signed by Martinez was removed and forwarded to The Light Group in October 2007.[5] Exhibit 5; Martinez Depo. at 28:9-14; Ohanian Depo. at 43:6-12. John

19

Peterson and Ozzie Ahmad (discussed below) signed the same bid sheet. Exhibit 5. Both of

20

these men were made offers by Diablo's. Declaration of Lorena Gil ("Gil Dec."), attached hereto

21

as Exhibit 6 ¶¶ 9-10; Dkt. #58 at 4 ¶ 10 and citations therein.

22
23
24
25
26

The Light Group set the interview schedule for Monte Carlo employees and then passed those times along to Monte Carlo, who contacted the employees that would be interviewed. Ohanian Depo. at 55:15-56:2. Martinez was interviewed at Diablo's. Martinez Depo. at 30:1-4. After the interview, Martinez states that he was given a phone number to call to set up a second

27
28

---

[5]    Martinez admits he did not sign the first round of bids prior to Diablo's opening, and testifies that he does not know if he signed any after the bid sheet he signed which led to his interview in October. Martinez Depo. at 30:11-15, 212:4-15, 213:21-214:8.

interview at The Light Group headquarters, which Martinez did. Martinez Depo. at 42:1-10.

Martinez and other Monte Carlo employees also participated in a pour test that was administered at Diablo's by The Light Group.[6] Exhibit 7; Martinez Depo. at 44:10-16, 198:7-24, 211:11-13. The pour test was required by Diablo's because it was opening as a "free pour" establishment, meaning the bartenders poured drinks without using a measuring device called a "jigger." MacDonnell Depo. at 125:7-21, 127:10-12. This made the ability of the bartender to pass a pour test an important part of the hiring evaluation. MacDonnell Depo. at 125:22-126:9. The pour test consisted of an applicant pouring a specified amount of liquid into a beaker system where the evaluator can see the amount of liquid poured into the beaker but the applicant cannot. MacDonnell Depo. at 129:14-130:24; Martinez Depo. at 195:1-20. All applicants were asked to pour a specified amount of liquid seven times with each hand. *Id.* The test was objective. Applicants either poured the correct amount or they did not. MacDonnell Depo. at 131:1-16. Martinez scored 3 out of 14, which Martinez admits was not a good score. Exhibit 7; Martinez Depo. at 210:2-4.

Although Martinez failed the pour test, he was given a second interview for a position at Diablo's. Martinez Depo. at 211:11-16. The second interview occurred at The Light Group headquarters. *Id.* at 205:24-206:1. Martinez's second interview was conducted by employees of The Light Group. *Id.* at 42:1-43:2. Martinez was not selected for a bartender position at Diablo's.

       *iii.*    *Monte Carlo forwarded bids to Brand, but Martinez Was Not Interviewed*

Prior to the opening at Brand, informational meetings were held for Monte Carlo employees who might have been interested in working at Brand.[7] Exhibit 8; Martinez Depo. at

---

[6]    Martinez believes that this occurred prior to his second interview. Martinez Depo. at 44:10-16.

[7]    As discussed fully below, Martinez inadvertently did not receive a letter inviting him to an informational meeting regarding Brand because he was a relief bartender; thus, he did not work full time in Houdini's/Blackstone. Martinez Depo. at 21:21-24; 58:6-13  Because letters were sent only to employees coded to the venue, Martinez was not part of the mailing. Ohanian Depo. at 86:5-87:21. Once this was discovered, Martinez was informed of the meeting prior to it taking place, and he attended. Martinez Depo. at 60:12-18; Ohanian Depo. at 87:16-21.

60:4-15; Ohanian Depo. at 34:5-11.  Martinez attended one of those meetings on March 13, 2008.

Exhibit 8; Martinez Depo. at 60:4-15, 216:17-19.  After the informational meeting, Martinez

signed a bid sheet for Brand.  Exhibit 9; Martinez Depo. at 61:3-13.  The bid sheet signed by

Martinez was removed on March 20, 2008, and as was the case with all Brand bid sheets, it was

forwarded to The Light Group.  Ohanian Depo. at 99:14-100:7.  It is undisputed that Martinez

was never interviewed for a position at Brand.  Martinez Depo. at 61:14-15.   During his

deposition, Martinez first stated he did not remember if he was invited to interview at Brand, but

later decided he was never called.  Martinez Depo. at 61:16-18, 229:11-13.[8]   Importantly,

however, Monte Carlo did not choose who would be interviewed for Brand, nor did it make hiring

decisions.  Deposition of Maria De La Torre ("De La Torre Depo."), attached hereto as Exhibit 10

at 76:12-14; Ohanian Depo. 99:14-100:7; MacDonnell Depo. at 154:9-156:10.

    **C.**    **Sex and Age Discrimination**

        *i.*    *Martinez's Charges of Discrimination*

Martinez depends upon his November 1, 2007 charge of discrimination for his age and sex

discrimination claims, as he must, because no other age or sex discrimination charge is timely.

Exhibit 11.  In fact, Martinez made this clear when in Opposition to Defendant Victoria Partners'

Motion to Dismiss Parts of Plaintiffs' Complaint (Dkt. # 21), attached hereto in relevant part as

Exhibit 12, the Plaintiffs stated that they were relying on Martinez's November 1, 2007 charge to

satisfy administrative exhaustion requirements.  *Id.* at 2:24-4:4.  However, this charge clearly

relates only to the 2007 hiring practices at Diablo's.  Exhibit 11.  That is, the charge specifically

states that in September of 2007, "the Respondent posted job openings for Bartender positions at

Diablo Restaurant" and that some employees were not given timely notice of interviews, others

had their names crossed off bid sheets, and that younger less experienced females were hired for

---

[8]    The Light Group's record evidence that Martinez was on a list of Monte Carlo employees who signed bid sheets, but that he did nothing further to pursue employment at Brand.  *See* Dkt. #58 at 5 ¶ 13 and citations therein.

the Bartender positions at Diablo's.  *Id.*  The charge makes no mention of Brand.  *Id.*  In fact, the charge, filed on November 1, 2007, was signed under oath by Martinez approximately four months before there were informational meetings for Brand or Martinez signed a bid sheet for Brand.  *Compare* Exhibits 8 and 11.  While Martinez's sex and age claims may be properly before the Court to the extent they relate to Diablo's, Martinez's November 1, 2007 charge did not notify Monte Carlo of any claim against Brand.

None of Martinez's other charges satisfy the administrative exhaustion requirements for claims against Brand.  Specifically, Martinez filed a charge of discrimination with the EEOC on May 22, 2008, and amended that charge on June 12, 2008.  Exhibit 13.  However, that charge alleges age and retaliation only.  *Id.*  The EEOC issued Martinez a right to sue letter on this charge on June 6, 2011.  Exhibit 14.  The instant lawsuit was filed 294 days after this right to sue was issued.  Dkt. #1.  Martinez also filed a charge on September 29, 2008 (Exhibit 15), which only raises alleged violations of the ADEA.  On August 31, 2010, the EEOC issued a no probable cause finding and a right to sue on this charge.  Exhibit 16.  It is undisputed that no suit was filed within 90 days of this Dismissal and Notice of Rights.  Approximately seven months later, on March 30, 2011, the EEOC sent out a Notice of Intent to Reconsider stating that it was vacating and revoking the dismissal to continue processing September 29, 2008 charge.  Exhibit 17.  On April 11, 2011, the EEOC issued a Letter of Determination finding reasonable cause to believe that "aggrieved parties who were in the bartender position" had been discriminated against on the basis of age."  Exhibit 18.  A right to sue based on age discrimination only was then reissued on July 14, 2011.  Exhibit 19.  As explained below, Martinez cannot, as a matter of law, rely on the July 2011 notice to bring his claims to the Court.

Martinez filed an unperfected Charge with the EEOC on October 6, 2010, alleging age discrimination, national origin discrimination, and retaliation.  Exhibit 20.  On November 29,

2010, the EEOC dismissed the charge, and informed Martinez of his right to sue.  Exhibit 21.  This lawsuit was filed 483 days after the right to sue on this charge was issued.  Dkt. #1.  Martinez filed his last charge with the EEOC on September 8, 2011, alleging retaliation only.  Exhibit 22.  Martinez was issued a right to sue letter for this charge on April 25, 2013.  Exhibit 23.  This retaliation charge cannot be the basis for Martinez's sex and age claims.

> ii.     *There is No Evidence that Monte Carlo Engaged in Age or Sex Discrimination*

Monte Carlo made no hiring decisions for Diablo's or Brand and thus cannot have acted with age or sex based animus with respect to Martinez's failure to be hired at either venue.  Moreover, Martinez does not dispute that he was interviewed and took a required pour test (which he failed) at Diablo's.  Exhibit 7; Martinez Depo. at 30:1-4, 210:2-4.  Despite having been a bartender for 12 or 13 years, Martinez complains that he was not given enough time to prepare for the pour test.  Martinez Depo. at 44:17-20, 45:13-15.  However, Martinez admits that everyone who applied when he did was treated similarly and given the same amount of notice.  Martinez Depo. at 47:2-4, 205:13-23.  It is undisputed that Monte Carlo had no control over the timing of the pour test.  Ohanian Depo. at 60:23-61:12; Martinez Depo. at 64:4-13.

Moreover, irrespective of what facts he may dispute, Martinez does not dispute that John Peterson was hired by Diablo's.  *Id.* at 208:3-4; Exhibit 24.  Although he makes some excuse, the objective evidence shows that Mr. Peterson is older than Martinez, Martinez testifies that they were interviewed by the same person, and Mr. Peterson took the pour test on the exact same day as Martinez, and passed.  Martinez Depo. at 59:17-60:3, 208:1-14; Gil Dec. ¶ 9; Exhibit 11 (showing Martinez's birthdate).  Further, Ozzie Ahmad, 44 in 2007, signed the same October 2007 bid sheet that Martinez signed.  Exhibit 5; Gil Dec. ¶ 10.  He too was offered a position at Diablo's.  Dkt. #58 at 4 ¶ 10 and citations therein.  Finally, Darren Siegmund, 25 in 2007, signed the July 2007 bid sheet, which Martinez did not sign (because he was not sure Diablo's was a

1  union establishment).  Exhibit 4; Martinez Depo. at 212:4-15, 213:12-16, 213:21-214:8.  Mr.

2  Siegmund was offered and accepted a position at Diablos.  Exhibit 24; Gil Dec. ¶ 11.[9]

3      With respect to Brand, Martinez, who attended informational meetings and signed a bid

4  sheet, was never interviewed.  Martinez Depo. at 60:12-18, 61:14-15; Exhibits 8 and 9.  But

5  Martinez has no evidence whatsoever that ties this failure to Monte Carlo.  In fact, when asked if

6  he knew who made the decision on who would be contacted for an interview at Brand, Martinez

7  stated that he does not "have that information."  Martinez Depo. at 229:18-25.  Undisputed

8  evidence shows that two men, one of whom was a Monte Carlo bartender who was over 40 (Ted

9  Paiz), applied and were offered positions by Brand.[10]  Exhibit 24; Gil Dec. ¶ 6; MacDonnell

10  Depo. at 137:2-15.  Mr. Paiz signed the same bid sheet Martinez signed; his name was forwarded

11  to The Light Group; and he was offered a job.  Exhibit 9; Exhibit 24; Gil Dec. ¶ 6.

12  
13      **D.    Retaliation**

14          *i.    Not Receiving the Original Correspondence Regarding the Brand*
15          *Informational Meeting*

16      Martinez alleges that Monte Carlo retaliated against him by not calling him or sending

17  him a letter inviting him to an informational meeting for employees who worked at Houdini's

18  (also referred to as Blackstone) regarding the opening of Brand.  Martinez Depo. at 57:14-18,

19  155:13-19.  This is a classically specious claim.  While Martinez was not sent the original letter

20  sent to employees coded to Houndini's, the reason is simple and uncontested.  Martinez was a

21  relief bartender at the time.  *Id.* at 20:23-21:5, 58:6-13.  He did not work full time in

22  Houdini's/Blackstone's.  *Id.* at 21:21-24, 58:6-13.  Monte Carlo only sent letters to all employees

23  
24  

25  [9]    Martinez's co-Plaintiff, Van Biezen, signed the same bid sheet and was contacted for an interview at Brand.
       Deposition of Cary Van Biezen ("Van Biezen Depo."), attached hereto as Exhibit 25 at 50:12-16.  Co-Plaintiff
26     Atkinson was also interviewed by Brand.  Deposition of Daniel Atkinson ("Atkinson Depo.") attached hereto as
       Exhibit 26 at 25:20-22.  Martinez also testified that Joel Knapp went to work for Diablo's and he remembers Bernard
27     Wright and Robert Eads working as well.  Martinez Depo. at 26:19-27:5, 74:18-23.

28  [10]    David Rahn was a Diablo's employee who applied at Brand and was offered a position, but ultimately chose
       not to accept it.  MacDonnell Depo. at 137:2-15.

coded in its system that were full time Houdini's/Blackstone's employees. Ohanian Depo. at 86:5-87:21. Ms. Ohanian testified accordingly:

> **Q:** How do you recall that?
> **A:** I remember Maria telling me that he got missed based on his status in the system. When we run a report out of our system, we ask for everyone attached to Blackstone's, so we know that we will get all of the individuals. So that we're talking cooks and dishwashers and anyone who is attached to that restaurant. So you have to go into the system and do it by where they are job coded into. And at the time, Pablo was a relief and his name -- in the system, he was not coded to Blackstone's. So the system did not put out his name as someone that we should notify. Once we realized that he had some shifts in Blackstone's and in other venues, then we were – we made sure that we called him to let him know about the informational meetings.

*Id.* at 86:19-87:10. What is also uncontested is that, Martinez was notified of the informational meetings and, he attended on March 13, 2008. Martinez Depo. at 60:12-18; Ohanian Depo. at 87:16-21; Exhibit 8. Martinez even acknowledged that, at the time, someone explained to him that he did not receive the informational meeting letter by mistake because he was only a relief bartender at the Houdini's/Blackstone's, not full time in that venue. Martinez Depo. at 78:21-79:2. Thus, his name did not come up on the list of bartenders at the venue. Ohanian Depo. at 86:19-87:10; Martinez Depo. at 78:21-79:2.

### ii. *Alleged Retaliation* by *Ryan Hink*

Martinez alleges that a former Monte Carlo Assistant Beverage Manager, Ryan Hink, engaged in several acts of retaliation. The problem with all of Martinez's allegations is that, even assuming these events occurred as described by Martinez, there is no evidence of a causal connection between a protected activity and these actions.

Martinez claims that Mr. Hink told him that he could not put his cash bank inside of an empty cash register prior to his shift starting. Martinez Depo. 142:12-23. Martinez also claims that Mr. Hink told him not to stand behind the bar prior to his shift starting. *Id.* at 142:24-143:8. Martinez further claims that on one occasion after having been told not to do these things,

1  Martinez gave his bank to another employee for safekeeping until his shift started, and when Mr.

2  Hink found out that Martinez had done so, Mr. Hink yelled and threatened to send him home. *Id.*

3  at 143:9-18.  Lastly, Martinez claims that Mr. Hink told him to clock in at the employee bank

4  clock and that he was the only person who was told to do so.  *Id.* at 144:7-18.  Martinez admits

5  that he was never written up for these alleged incidents.[11]  Martinez Depo. at 150:2-14.

6        Mr. Hink was an assistant beverage manager with supervisory responsibilities over Monte

7  Carlo bartenders for all of six months, from April 2011 to October 2011.  Hink Dec. ¶ 1.  Mr.

8  Hink knew nothing about Martinez having filed any charges of discrimination, claims or

9  complaints of discrimination, or about any lawsuit pertaining to discrimination until the first half

10  of 2012.  *Id.* at ¶ 3.  Martinez admits that he never told Mr. Hink about any complaints he had

11  filed, and Mr. Hink was never in any meetings with Martinez where Martinez's charges or

12  complaints had been discussed.  Martinez Depo. at 151:11-19.  Mr. Hink also never said anything

13  which led Martinez to believe that he knew Martinez had made complaints.  *Id.* at 151:20-23.  Mr.

14  Hink could not have been acting in retaliation, because he knew nothing about Martinez's

15  protected activity while he was an assistant beverage manager.  Hink Dec. ¶¶ 1, 3.

16          *iii.    Rick Goldstein's Comment*

17        Martinez also bases his retaliation claim on an alleged statement by Mr. Goldstein that he

18  believes questioned his integrity.  Martinez Depo. at 156:9-157:5.  Martinez claims that during an

19  informational meeting about the closure of Houdini's, Mr. Goldstein was asked by another Monte

20  Carlo employee what would happen to Martinez since he worked graveyard shifts and Brand was

21  not going to be open for graveyards.  Martinez Depo. at 156:9-20.  According to Martinez, Mr.

---

[11]    Mr. Hink has no recollection of ever speaking to Martinez about putting his bank in the drawer or behind the bar, or of giving his bank to another employee until his shift started.  Declaration of Ryan Hink (hereinafter "Hink Dec.") attached hereto as Exhibit 27 ¶ 5.  However, it was against Monte Carlo policy for a bartender to place their bank in the register or behind the bar prior to clocking in.  *Id.*; MacDonnell Dec. ¶ 9.  Likewise, bartenders are prohibited from giving their bank to another employee for safekeeping.  *Id.*  Had Mr. Hink observed Martinez breaking these policies, then Mr. Hink would have spoken to Martinez as he would have any other bartender.  Hink Dec. ¶ 5.  Mr. Hink has no knowledge of where Martinez clocked in and denies ever speaking to Martinez about where he clocked in.  *Id.* ¶ 6.  Accordingly, these allegations of retaliation related to Mr. Hink are meritless.

1    Goldstein replied that they couldn't speculate about that at the time because Martinez could get

2    caught stealing and might have to be fired before the restaurant opened. *Id.* at 156:21-157:1.

3    Martinez was upset by the fact that Mr. Goldstein allegedly used the word stealing when he could

4    have used other types of examples for why Martinez might not have been working by the time

5    Brand opened. *Id.* at 157:2-5.

6
        Martinez brought what he was told to the attention of Ms. Ohanian (Vice President of

7    Human Resources) and Martinez filed a grievance over the matter in October 2007. Exhibit 28;

8    Martinez Depo. at 158:19-159:2. Martinez admits that Ms. Ohanian took his complaint seriously.

9    *Id.* at 159:6-9. Martinez testified that Mr. Goldstein participated in the grievance regarding this

10   issue, but Martinez does not remember if Mr. Goldstein was counseled or disciplined for this

11   alleged incident.[12] *Id.* at 161:17-20. The objective evidence shows that the alleged comment by

12   Mr. Goldstein occurred in September 2007, and that Martinez filed a grievance in October 2007.

13   Exhibit 28; Supplemental Declaration of Sherri Ohanian (hereinafter "Ohanian Supplemental

14   Dec.") attached hereto as Exhibit 30 at ¶ 3. However, Martinez did not engage in protected

15   activity until November 1, 2007 (Exhibit 11). Thus, Martinez' protected activity could not have

16   been the but for reason for Mr. Goldstein's comment.

17
                    iv.    *Wearing His Nametag in McDonalds Line*

18
        Martinez claims that he was retaliated against by Samantha Solich when this, then, Monte

19   Carlo assistant beverage manager, allegedly told him that he could not wear his Monte Carlo

20   name tag while in line at a McDonalds inside the Monte Carlo. Martinez Depo. at 161:21-162:4.

21   The only impact the comment had on Martinez was that he felt it was a "little odd." *Id.* at 162:16-

22   18. Other than the alleged instruction not to wear his nametag, Martinez admits nothing else

23   came of the situation. *Id.* at 162:21-24.

---

[12]    Mr. Goldstein has not been employed by Monte Carlo since September 2010. Supplemental Declaration of
Lorena Gil (hereinafter "Gil Supplemental Dec.") attached hereto as Exhibit 29 at ¶ 6.

Ms. Solich worked in the beverage department from November 2011 to March 2013. Declaration of Samantha Solich ("Solich Dec.") attached hereto as Exhibit 31 ¶ 1. Part of Ms. Solich's duties as an assistant beverage manager was to walk the casino floor every day and observe beverage department employees. *Id.* ¶ 4. Ms. Solich has no specific recollection of telling Martinez that he should not be wearing an employee badge when at a Monte Carlo public dining establishment. *Id.* ¶ 11. However, wearing an employee badge when at these dining establishment was not allowed, and when Ms. Solich noticed any employee doing so, she reminded them to remove their badge. *Id.* ¶ 11.

   *v.*   *MacDonnell Email*

Martinez claims he was retaliated against by Mr. MacDonnell allegedly emailing an employee of the The Light Group, Russell Jones, in December 2011 or January 2012, and encouraging him to ask some of his employees to not frequent the bar Martinez worked in after they finished their shifts. Martinez Depo. at 163:17-164:13, 165:16-19. Interestingly, Martinez later testified at deposition that he does not believe Mr. Jones told Diablo's employees not to go to the bar at which he worked because some of them are still going. *Id.* at 178:23-179:8. In any event, Martinez admits he was told this story by a Diablo's bartender named "Marshal." *Id.* at 164:15-18, 165:24-166:3. Martinez also doesn't know if the email could have concerned something else; it's simply his "assumption" that it must have had to do with him. *Id.* at 167:24-168:4. Martinez states he never complained to anyone at Monte Carlo about this event. *Id.* at 171:14-18.

Mr. MacDonnell admitted in deposition that he emailed Mr. Jones, but his inquiry concerned whether Diablo's employees were allowed to drink at Monte Carlo bars in uniform. MacDonnell Depo. at 123:11-25. Mr. Jones informed Mr. MacDonnell that Diablo's policy was that Diablo's employees should not be drinking in Monte Carlo bars while in uniform. *Id.* Mr.

MacDonnell believes Mr. Jones handled the situation on his end. *Id.* The concern had nothing to do with Martinez; in fact, Mr. MacDonnell testified that Diablo's employees were free to frequent any Monte Carlo bar as long as they removed their uniform first. *Id.* at 122:7-12, 124:23-125:4.

          *vi.*    *Taking Away the Beer Container*

Martinez believes he was retaliated against by Erik Schloss when he came to work one day and found out that a beer cooler he normally works from had broken down. Martinez Depo. at 172:7-14. According to Martinez, with no cooler on his side of the bar, a bussing tub with ice was brought in to keep the beer near his station. *Id.* However, Martinez claims that 30 minutes into his shift, his supervisor, Mr. Schloss, took the tub away. *Id.* at 172:15-22. This required Martinez to use the working beer cooler at the other end of the bar. *Id.* at 172:15-173:1. Martinez called the alleged incident "tacky," and in his mind it somehow was "an indication that [Schloss'] decision was based on some information that he had about me or something." *Id.* at 173:3-10. Martinez admits that he never asked Mr. Schloss why he was removing the containers and never followed up on the issue. *Id.* at 174:6-12, 175:8-13. Martinez claims this incident likely took place in late 2012 or early 2013. *Id.* at 176:2-6

Schloss currently works as an assistant beverage manager at Monte Carlo. Declaration of Erik Schloss ("Schloss Dec.") attached hereto as Exhibit 32 ¶ 1. In his position, Mr. Schloss is required to monitor the bars and he visits all the bars multiple times a day. *Id.* ¶ 5. Mr. Schloss has never been asked to watch any particular employee more closely or to single out any particular employee, and he has never done so. *Id.* Mr. Schloss does not recall the incident alleged by Martinez; however, it is Monte Carlo's standard practice not to allow bartenders to use bussing tubs as beer coolers except in emergencies. *Id.* ¶ 6. Mr. Schloss explains that he does not use bus tubs full of ice because they are "ugly and keeps engineering from being able to repair the cooler." *Id.* In fact, Mr. Schloss only remembers bussing tubs being used twice in his two year

1    tenure at Monte Carlo and, on both occasions, the tubs were replaced as quickly as possible. *Id.*

2    Martinez doesn't dispute that the tubs were not what was normally used when a beer cooler broke

3    down. Martinez Depo. at 176:7-13.

4                    vii.    *Presence of The Light Group's Attorney at a Grievance Meeting*

5            Finally, Martinez claims that the presence of an attorney for The Light Group, David

6    Dornak, at a grievance meeting he participated in with several other bartenders was intimidating.

7    *Id.* at 67:18-22. Martinez was in attendance with three Union representatives (Lara Loebig, Terry

8    Greenwald, Mike Hoffman) as well as several other bartenders. *Id.* at 67:24-68:1, 68:23-69:4,

9    226:17-227:19; Exhibit 33. Martinez claims that his Union representatives were "not

10   comfortable" with The Light Group's counsel being present, but nonetheless they decided to go

11   ahead with the grievance. Martinez Depo. at 68:2-22. Martinez testified that Mr. Dornak's

12   participation in the meeting was minimal. *Id.* at 70:14-22. Despite not saying much, Martinez

13   still claims that he was intimidated because Mr. Dornak was allegedly staring at him. *Id.* at

14   228:8-10. At the time of the meeting, Martinez was a Union Shop Steward, which often required

15   him to act as a liaison between the Union and the Monte Carlo. *Id.* at 225:4-17. In that position,

16   Martinez had confronted management before without being intimidated. *Id.* at 225:18-226:16.

17           Martinez acknowledges that he did not ask Ms. Ohanian if she knew The Light Group's

18   counsel would be present at the meeting and no one ever told him that anyone at Monte Carlo

19   invited the attorney to the grievance. Martinez Depo. at 71:3-10. Ms. Ohanian confirms that no

20   one at Monte Carlo invited Mr. Dornak to the grievance meeting in question.     Ohanian

21   Supplemental Dec ¶ 4. In fact, Ms. Ohanian was unaware that Mr. Dornak would be at the

22   meeting until the meeting began. *Id.* Nonetheless *no one* at the meeting objected to Mr. Dornak's

23   presence or informed Ms. Ohanian that his presence made them uncomfortable. *Id.* Ms. Ohanian

24   recalls that all Mr. Dornak did was introduce himself and observe the meeting. *Id.* Ms. Ohanian

1    also did not observe anyone staring at Martinez throughout the grievance. *Id.*

2    **II.    LEGAL ANALYSIS**

3          **A.    Martinez is Barred From Bringing An Age or Sex Claim Related to Hiring**
4                **Practices at Brand**

5                *i.    Martinez's November 1, 2007 Charge*

6          Martinez has no Charge of Discrimination upon which he can rely to satisfy

7    administrative exhaustion requirements for his sex and age claim related to hiring at Brand.

8    "Although failure to file an EEOC complaint is not a complete bar to district court jurisdiction,

9    substantial compliance with the exhaustion requirement is a jurisdictional pre-requisite." *Leong*

10   *v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (citations omitted). The jurisdictional scope of the

11   plaintiff's court action "depends on the scope of the EEOC charge and investigation." *Id.* When

12

13   determining whether a plaintiff has exhausted allegations not specified in a charge, "it is

14   appropriate to consider such factors as the alleged basis of the discrimination, dates of

15   discriminatory acts specified within the charge, perpetrators of discrimination named in the

16   charge, and any locations at which discrimination is alleged to have occurred." *B.K.B. v. Maui*

17   *Police Dep't,* 276 F.3d 1091, 1100 (9th Cir. 2002).    "The crucial element of a charge of

18   discrimination is the factual statement contained therein." *Id.* at 1100.

19

20         For his age and sex discrimination claims, Martinez depends on the age and sex charge he

21   filed on November 1, 2007. Exhibit 11; Dkt. #21 at 2:24-4:4. However, Martinez cannot rely on

22   this charge to bring claims related to Brand hiring practices because the charge has nothing to do

23   with Brand. Exhibit 11. This charge clearly relates only to hiring practices at Diablo's in 2007.[13]

24   *Id.* On November 1, 2007, when Martinez filed the charge, the alleged discriminatory hiring

25   practices at Brand had not even begun. *Compare* Exhibit 8 with Exhibit 11. A claim for failing to

26

27   ───────────────
     [13]      This charge alleges that in September of 2007 "the Respondent posted job openings for Bartender positions
28   at Diablo Restaurant" and that some employees were not given timely notice of interviews, others had their named
     crossed off bid sheets, and that younger less experienced females were hired for the Bartender positions at Diablo's.
     Exhibit 11. The charge makes no mention of Brand. *Id.*

1    be hired to one position is discrete and distinct from a claim for failing to be hired to another

2    position. *Maune v. Bankers Life & Cas. Co.*, Case No. 4:10-cv-00074-BLW, 2012 U.S. Dist.

3    LEXIS 144828, *17 (D. Idaho Oct. 5, 2012).[14]  Because there is no relationship between the

4    charge Martinez relies on and the discriminatory treatment he actually complains of, Martinez

5    cannot rely on his November 1, 2007 charge to satisfy administrative exhaustion requirements for

6    claims related to Brand. *Id.*

7

8              *ii.*      *Martinez's Other Charges*

9         Martinez's other charges do not satisfy the exhaustion requirement for his claims against

10   Brand.  Plaintiffs are required to file a civil action within 90 days from the date the EEOC

11   dismisses a claim. *Scholar v. Pacific Bell*, 963 F.2d 264, 267 (9th Cir. 1992).  This 90-day period

12   operates as a limitations period. *Payan v. Aramark Mgmt. Servs. L.P.*, 495 F.3d 1119, 1121 (9th

13   Cir. 2007).  If claimant fails to file within the 90-day period, the action is barred. *Scholar,* 963

14   F.2d at 267.

15

16        The lawsuit in this case was filed on March 26, 2012.  Dkt. #1.  Martinez was issued a

17   right to sue on June 6, 2011 for his May 22, 2008 Charge (amended on June 12, 2008).  Exhibit

18   13 and 14.  Similarly, the EEOC issued a right to sue on Martinez's October 6, 2010 charge on

19   November 29, 2010.  Exhibits 20 and 21.  Thus, as a matter of law, neither these charges filed by

20   Martinez (Exhibits 13 and 20) can be the basis for the claim brought to Court in March 2012

21   because the lawsuit was filed substantially more than 90 days after the rights to sue were issued.

22   *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 202 (9th Cir. 1988) (filing suit

23   after the 90 day period bars plaintiff's claim).

24

25        Martinez was issued a right to sue on his September 8, 2011 charge (Exhibit 22) on April

26   25, 2013.  Exhibit 23.  However, this charge alleges retaliation only, and, thus cannot be the basis

27

28   [14]     In *Maune,* the court concluded that plaintiff's original charge with the EEOC alleging that plaintiff was
     denied the branch manager position would have failed to trigger an investigation into plaintiff's allegations that she
     was denied the unit manager and unit supervisor positions. 2012 U.S. Dist. LEXIS 144828 at *17.

of a valid sex or age discrimination claim because the charge is not reasonably related to those types of discrimination. Exhibit 22. *Thompson v. Trident Seafoods Corp.*, No. C11-0120RSL, 2012 U.S. Dist. LEXIS 53136, *3-5 (W.D. Wash. Apr. 16, 2012); *Duncan v. Delta Consol. Indus.*, 371 F.3d 1020, 1025-1026 (8th Cir. 2004), *abrogated in part by Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011).

Lastly, Martinez cannot rely on his September 29, 2008 charge based on age only because Martinez did not sue within 90 days of the issuance of the original right to sue. Exhibits 15 and 16. In order for a lawsuit to be timely based on a right to sue, where the EEOC has reconsidered and reissued its findings, the lawsuit must be filed within 90 days of the original finding or, if the reconsideration is issued within 90 days of the original finding, then within 90 days of the reissued finding. *Dougherty v. Barry*, 869 F.2d 605, 610-611 (D.C. Cir. 1989); *Obaseki v. Fannie Mae*, 840 F. Supp. 2d 341, 345 (D.D.C. 2012). Here, the EEOC issued its original right to sue on August 31, 2010. Exhibit 16. The EEOC issued its reconsideration on March 30, 2011, 211 days later. Exhibit 17. Thus, as explained in *Dougherty*, 869 F.2d at 610-611 and *Obaseki*, 840 F. Supp. 2d at 345, Martinez's claims based on his September 29, 2008 charge are time barred.

**B.    Martinez Fails to State a Claim for Sex Discrimination**

A prima facie claim of sex discrimination under Title VII requires a plaintiff to show that he belongs to a protected class; he was qualified for the position; he was subject to an adverse employment action; and, similarly situated employees outside his protected class were treated more favorably than he was. *Hawn v. Exec. Jet Mgmt.*, 615 F.3d 1151, 1156 (9th Cir. 2010). Thereafter, and assuming the Court finds Plaintiff establishes a prima facie case of employment discrimination, the burden shifts to Monte Carlo to "provide a legitimate, non-discriminatory reason for the employment action" complained of. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). Monte Carlo need offer only reasons that, "taken as true, would permit

1  the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's*

2  *Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).   The burden then shifts back to the plaintiff to

3  show the articulated reasons for an adverse action was pretextual. *Vasquez*, 349 F.3d at 641.   In

4  determining whether the employer's proffered reasons for termination was pretext, courts "only

5  require that an employer honestly believe its reason for its actions, even if its reason is foolish or

6  trivial or even baseless." *Villarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1063 (9th Cir 2002)

7  (citation and internal quotations omitted).   Here, there is no direct evidence of discriminatory

8  animus.[15]   Thus, Martinez must produce "specific and substantial evidence challenging the

9  credibility of the employer's motives" in order to establish pretext. *Vasquez*, 349 F.3d at 642.

11         *i.*     *There is No Direct Evidence of Discrimination*

12         During his deposition, Martinez made convenient allegations that he was told by other

13  Monte Carlo employees that they had overheard Michael MacDonnell, and another bar manager

14  Ryan Hink, at different times say that they knew how to get rid of old people at Monte Carlo.

15  Martinez Depo. at 87:1-89:1.   Not only are these statements classic hearsay, and therefore not

16  properly considered at summary judgment, but Martinez admits he never complained about the

17  statements to anyone at Monte Carlo. *Id.* at 89:15-23; *Beyene v. Coleman Sec. Services, Inc.*,

18  854 F.2d 1179, 1181-1183 (9th Cir. 1988) (court can only rely on admissible evidence when

19  ruling on summary judgment).   Martinez does not dispute the fact that this testimony is pure

20  hearsay. Martinez Depo. at 89:24-90:4.[16]

---

[15]    Direct evidence demonstrates discriminatory animus "without inference or presumption." *See Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1141-1143 (9th Cir. 2001) (*citing Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998)).   Circumstantial evidence "must be specific and substantial in order to survive summary judgment." *Id.* at 1142.

[16]    It is worth noting that neither Mr. Hink nor Mr. MacDonnell is a decision maker with authority to terminate Monte Carlo employees. Ohanian Supplemental Dec ¶ 6. Even if Messrs. MacDonnell or Hink could hire and term, the evidence shows that since April 2011, twenty-one Monte Carlo bartenders have been hired, seven of whom were 40 years or older (including two in their 50's and one in his 60's). Gil Supplemental Dec. ¶ 4.   During that same period, only four bartenders have been involuntarily terminated for performance reasons, two of whom were over 40 and two of which were under 40. *Id.* ¶ 5.

1    Given that the only evidence Martinez provides is inadmissible and all of the admissible

2  evidence is to the contrary, no genuine issue of material fact exists as to this convenient allegation

3  of direct discrimination.  Thus, Martinez must establish a circumstantial case of discrimination.

4                    ii.      *Martinez Cannot Establish a Claim of Sex Discrimination Against Monte*

5                             *Carlo*

6                    a.      Hiring at Diablo's

7          Martinez cannot establish that Monte Carlo treated him any differently than any other

8  employee because of sex.  In order to establish a prima facie case of discrimination, plaintiff must

9
   prove that similarly situated individuals outside his protected class were treated more favorably
10
   than him.  *Leong*, 347 F.3d at 1124; *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028
11
12  (9th Cir. 2006).  It is undisputed that Monte Carlo played no role whatsoever in Diablo's hiring

13  process and, thus, did not fail to hire Martinez.  MacDonnell Depo. at 154:4-8; 154:23-155:6;

14  155:10-18; 156:5-10; Ohanian Depo. at 33:20-34:1; 35:10-36:5; 57:11-59:9; 60:3-9; 60:23-61:12.

15  What Monte Carlo did do, was forward all eligible names on the bid sheet to The Light Group,

16
   who made all the hiring decisions.  Ohanian Depo. at 43:6-12.  Undisputed evidence also shows
17
   that after forwarding bid sheets to The Light Group, three male Monte Carlo bartenders who
18
19  applied for Diablo's bartender positions were offered positions (John Peterson, Ozzie Ahmad,

20  Darren Siegmund).  Exhibits 4, 5 and 24; Gil Dec. ¶¶ 9-11; Dkt. #58 at 4 ¶ 10 and citations

21  therein.  Thus, all the evidence points to the fact that Monte Carlo treated all of its employees the

22  same with respect to hiring at Diablo's.  Accordingly, Martinez cannot establish a case of

23
   discrimination because he cannot demonstrate that sex played any role in any action taken by
24
   Monte Carlo or that Monte Carlo did anything but treat all of its employees the same when it
25
26  provided the bit sheets to The Light Group.  *Leong*, 347 F.3d at 1124; *Cornwell*, 439 F.3d at

27  1028; *Wheeler v. Chertoff*, Case No: C 08-1738 SBA, 2009 U.S. Dist. LEXIS 61799, *17-18

28  (N.D. Cal. July 17, 2009).

b.      Hiring at Brand

Even if Martinez's claims relating Brand are not barred, he cannot establish a valid claim of sex discrimination.  Martinez signed a bid sheet for a position at Brand that was signed by several other male, Monte Carlo employees.  Exhibit 9.  Monte Carlo sent the bid sheet to The Light Group, who interviewed select employees and made hiring decisions accordingly.  Ohanian Depo. 92:18-93:2; 99:14-100:7; MacDonnell Depo. at 154:9-156:10.  Monte Carlo had no control over who was interviewed at Brand. De La Torre Depo. at 76:12-14; Ohanian Depo. at 99:14-100:7. Co-Plaintiffs, Van Biezen and Atkinson, both men, signed bid sheets and were interviewed at Brand.  Exhibit 9; Van Biezen Depo. at 50:12-16; Atkinson Depo. at 25:20-22.  The evidence also shows that two male bartenders, Mr. Paiz and Mr. Rahn, were offered positions at Brand. Exhibit 24; Gil Dec. at ¶ 6; MacDonnell Depo. at 137:2-15.  Mr. Paiz worked at Monte Carlo and signed the same bid sheet as Martinez.  Exhibit 9.  Given these facts, Martinez's arguments that his gender was a reason why he was not hired at Brand are without merit.  Martinez cannot establish a case of discrimination relating to Brand because he cannot demonstrate that Monte Carlo treated men less favorably than women with respect to the hiring process at Brand.[17] *Leong*, 347 F.3d at 1124; *Cornwell*, 439 F.3d at 1028; *Wheeler*, 2009 U.S. Dist. LEXIS 61799 at *17-18.  Accordingly, summary judgment should be granted as to Plaintiff's sex discrimination claims.

---

[17]       Martinez makes a vague complaint about Monte Carlo failing to post The Light Group job openings on the "employees computer kiosk." Martinez Depo. at 289:4-13.  Martinez's contention is based on the erroneous belief that Monte Carlo was required to post The Light Group's job openings on Monte Carlo the "employees computer kiosk." Monte Carlo does not do so; is not required to do so; and does not post third party job opportunities on the its employees kiosk. Ohanian Supplemental Dec. ¶ 5.  Martinez presents no evidence of how, even if it were required, not posting the job openings was discriminatory in nature.  If Monte Carlo did not post the job openings on the computer kiosk, they were treating all employees similarly.

   *iii.* *Legitimate Non-Discriminatory Reasons Exist For Diablo's Not Hiring Martinez*

If Martinez establishes a prima facie case of discrimination, which he cannot do, and he argues that Monte Carlo should be responsible for The Light Group's decision not to hire him at Diablo's, the decision shows that this decision was based purely on qualifications. The Light Group required applicants at Diablo's to take a pour test. Exhibit 7. Martinez knew this was required and even though he had been a bar tender for 12 or 13 years already, he claims he did not have enough time to prepare for the test. Martinez Depo. at 44:17-20, 45:13-15; 193:9-19. However, Martinez acknowledges that everyone who signed the bid sheet had the same amount of time to prepare.[18] Martinez Depo. at 47:2-4. Martinez took the test and scored a meager 3 of 14 on the test, which is a failing grade. Martinez Depo. at 210:2-4; Exhibit 7. Because Diablo's was a free pour establishment, free pouring was an important skill because inconsistent pouring impacts a venue's cost of operation and can affect guest satisfaction.. MacDonnell Depo. at 125:22-127:9. Moreover, there is not one shred of evidence that others who performed as poorly were hired at Diablo's. Having proffered a legitimate reason for Martinez's failure to be hired at Diablo's the burden shifts back to Martinez to establish this reason was pretextual. *Vasquez*, 349 F.3d at 641

   *iv.* *There is No Evidence of Pretext*

On summary judgment, plaintiff must point to evidence, supported by the record, that demonstrates a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). The mere existence of a scintilla of evidence in support of a plaintiff's position is insufficient to establish a genuine dispute; there must be evidence on which the fact finder could reasonably find for the plaintiff. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 252 (1986). Evidence of pretext must be specific and substantial. *Vasquez*, 349 F.3d at 642.

---

[18]  It is also undisputed that Monte Carlo had no control over the timing of the pour test. Ohanian Depo. at 60:23-61:6. Martinez acknowledges this fact. Martinez Depo. at 64:4-13.

Martinez does not create a question of fact simply by disagreeing with the legitimate reason for not being hired based on personal belief that the true reason was discriminatory. *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986); *Cornwell*, 439 F.3d at 1028 n.6.   Martinez's opinion that applicants were not given enough time to prepare for the pour test also cannot establish his discrimination claim. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1285 (9th Cir. 2000)(an employer's subjective criteria or evaluation process is part of their own business judgment and an opinion that the process was subjective or flawed in some manner is not evidence of discrimination).   When determining whether the employer's proffered reasons for termination was pretext, the Courts need only determine if the reason is honestly believed, even if the reason "is foolish or trivial or even baseless." *Villiarimo*, 281 F.3d at 1063 (citation and internal quotations omitted).

While Martinez's believes he was not hired at Diablo's because of his sex, the evidence is all to the contrary.[19]   That is, three of Martinez's coworkers, all male, were offered positions at Diablo's. Exhibit 24; Gil Dec. ¶¶ 9-11; Dkt. #58 at 4 ¶ 10 and citations therein.  Mr. Peterson and Mr. Ahmad signed the same bid sheet as Martinez.  Exhibit 5.  Martinez testified that Peterson was interviewed by the same person and took the pour test on the same day as he did.  Martinez Depo. at 59:17-60:3, 208:1-14.   And, while Martinez disagrees with the process and test, it obviously did not prevent Diablo's from making offers to similarly situated men.  Given these undisputed facts, Martinez fails to meet his burden, let alone present specific and substantial evidence of a pretextual motive engendered by Monte Carlo. *Vasquez*, 349 F.3d at 642.

---

[19]   Martinez's subjective belief that he was discriminated against does not create a genuine issue of material fact. *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996); *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (plaintiff's "mere assertions that [defendant] had discriminatory motivation and intent in failing to promote him were inadequate, without substantial factual evidence, to raise an issue precluding summary judgment.").

C.     **Martinez Fails to Establish An Age Discrimination Claim**

A plaintiff establishes a prima facie case of discrimination under the ADEA if he demonstrates that he is over 40, he applied for a position for which he was qualified, and that a younger person with similar qualifications received the position. *Cotton v. Alameda*, 812 F.2d 1245, 1248 (9th Cir. 1987). However, "[u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 174 (2009). Rather, a plaintiff, like Martinez, must prove by a "preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Id.* at 177-178;

Martinez, Mr. Peterson, and Mr. Ahmad all signed the same bid sheet for Diablo's. Exhibit 5. All were interviewed and tested. Mr. Peterson and Mr. Ahmad were offered positions, Martinez was not. Exhibit 24; Gil Dec. ¶¶ 9-10; Dkt. #58 at 4 ¶ 10 and citations therein. Mr. Peterson is older that Martinez, and while not older, Mr. Ahmad was in his 40's. Gil Dec. ¶¶ 9-10; Exhibit 11 (showing Martinez's birthdate). This evidence shows belies the notion that but for Martinez's age Diablo's would have hired him for a bartending position. .

As for Brand, Monte Carlo sent Martinez's name along with all other applicants who signed the bid sheets to The Light Group. Ohanian Depo. 99:14-100:7. Several individuals who signed bid sheets were interviewed included co-plaintiffs Van Biezen and Atkinson. Van Biezen Depo. at 50:12-16; Atkinson Depo. at 25:20-22. Of those interviewed, two male bartenders were offered positions at Brand, including Monte Carlo bartender, Teddy Paiz, who was over 40. Exhibit 24; Gil. Dec. ¶ 6; MacDonnell Depo. at 137:2-15. Monte Carlo did not control who was selected for interviews at Brand, and treated all of its employees equally by sending the bid sheets to The Light Group. Ohanian Depo. 99:14-100:7; De La Torre Depo. at 76:12-14. Nonetheless, given the ages of those who received interviews (Van Biezen and Atkinson), and the fact that a 43

year old (Mr. Paiz) was offered a position at Brand, obviously age was not a determining factor in the hiring process at Brand.  Had it been, Paiz certainly would not have been hired.  Any subjective belief to the contrary does not create a genuine issue of material fact.  *Bradley*, 104 F.3d at 270; *Steckl*, 703 F.2d at 393.  Given the objective evidence, Martinez cannot establish that age was the "but-for" factor which led to him not being hired at Brand.  *Gross*, 557 U.S at 177-178.

### D.     Martinez's Claim for Retaliation Fails

To establish a prima facie claim of retaliation, "a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two." *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000) (citing *Payne v. Norwest Corp.,* 113 F.3d 1079 (9th Cir. 1997)).  Not any action by an employer can form the basis of retaliation; rather, it must be a "materially adverse" action.  *See Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 57 (2006).  Such adverse action is one that is "reasonably likely to deter the charging party or others from engaging in protected activity." *Poland,* 494 F.3d 1174, 1180 (9th Cir. 2007).  It is Plaintiff's burden to prove, by a preponderance of the evidence, the essential element of a causal link that the adverse action was taken "because" of the protected activity.  *Id.* at 1181.  More specifically, "retaliation claims must be proved according to traditional principles of but-for causation." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar,* __ U.S. __, __, 133 S. Ct. 2517, 2533 (2013).

> i.     *Not Receiving the Original Correspondence Regarding the Brand Informational Meeting*

Martinez cannot establish a retaliation claim based on Monte Carlo inadvertently failing to advise him of an informational meeting occurring at Brand.  When Monte Carlo found out that Martinez had not been sent the original correspondence because he was a relief bartender, and therefore was not coded as a Houdini's/Blackstone bartender, Monte Carlo took action to inform

1    Martinez of the meeting which he admits he attended.  Ohanian Depo. at 86:19-87:10; Martinez

2    Depo. at 60:12-18; Exhibit 8.  The mistake, which admittedly caused no harm on Martinez, does

3    not rise to the level of an adverse employment action.  *Brooks*, 229 F.3d at 928; Martinez Depo.

4    at 60:12-61:13 (admitting he attended the meeting and signed a bid sheet for Brand); Exhibits 8

5    and 9.[20]  Absent evidence of a "but-for" causal connection between protected activity and a

6    material action complained of, Martinez's retaliation claim fails.  *Univ. of Tex. Southwestern Med.*

7    *Ctr.*, __ U.S. at __; 133 S. Ct. at 2533.

8

9              ii.      *Alleged Retaliation* by *Ryan Hink*

10             The problem with all of the allegations Martinez makes regarding Ryan Hink is that there

11   is no evidence of a causal connection between a protected activity and the alleged actions.

12   Absent evidence of a causal connection, Martinez's retaliation claim fails.  *Cohen v. Fred Meyer,*

13   *Inc.*, 686 F.2d 793, 797 (9th Cir. 1982) (when the decision maker about whom the plaintiff

14   complains does "not know that . . . [the plaintiff] had engaged in a protected activity . . . the

15   requisite causal link between the decision" and the protected activity is broken).

16

17             Mr. Hink had supervisory responsibilities for Monte Carlo bartenders from April 2011 to

18   October 2011.  Hink Dec. ¶ 1.  Mr. Hink knew nothing about Pablo Martinez having filed any

19   charges of discrimination, claims or complaints of discrimination, or about any lawsuit pertaining

20   to discrimination until sometime in 2012.  Hink. Dec. ¶ 3.  Martinez presents no evidence to the

21   contrary.  Accordingly, none of the alleged incidents attributed to Mr. Hink could have occurred

22   after the time Mr. Hink became aware of protected activity.  Therefore, Martinez cannot establish

23   the necessary causal link that will save these claims from summary judgment.  *Raad v. Fairbanks*

24   *N. Star Borough*, 323 F.3d 1185, 1197 (9th Cir. 2003) (affirming summary judgment in

25   defendant's favor on plaintiff's retaliation claim where plaintiff failed to present any evidence in

26

27

28   ---
     [20]        In fact, Martinez acknowledges that that at the time he was told that he did not receive the correspondence
     because he was not coded as a Houdini's/Blackstone's bartender.  Martinez Depo. at 78:21-79:2.

1    the record supporting the assertion that person who chose not to hire her knew she had engaged in

2    protected activity).  Accordingly, summary judgment should be granted on this allegation.

3                iii.     Goldstein's Comment

4            Any alleged comment by Rick Goldstein cannot form the basis of his retaliation claim for

5    several reasons.  First, Martinez did not witness Goldstein make the comments, he was only later

6    told of them.  Martinez Depo. at 156:9-157:5.  This means that whatever Martinez's colleagues

7    told him was said is hearsay, which Martinez offers for the truth that Goldstein made the

8    comment.  Only admissible evidence may be considered by the court when weighing summary

9    judgment. Fed. R. Civ. P. 56; *Beyene,* 854 F.2d at 1181-1182.

10

11           Even if the statements are considered by the Court, they do not establish a claim of

12   retaliation because there is no causal connection between protected activity and the comments.

13   Mr. Goldstein's alleged comments were made in September 2007, which was prior to Martinez

14   even filing his first charge of discrimination on November 1, 2007.  Exhibits 11; Ohanian

15   Supplemental Dec. ¶ 3.  Absent proving a protected activity, and a causal connection between it

16   and the employment action, Martinez cannot establish a case of discrimination.  *Silver v. KCA,*

17   *Inc.,* 586 F.2d 138, 143 (9th Cir. 1978) (if a charge is not filed with the EEOC until after the

18   adverse employment action, the employment action cannot be motivated by a desire to retaliate

19   for the charge); *Culton v. Missouri Dep't of Corr.,* 515 F.3d 828, 831 (8th Cir. 2008) (supervisor's

20   decision to transfer plaintiff to lesser position was made prior to supervisor learning of

21

22   discrimination complaints).  Given that the protected activity came after the alleged employment

23   action, no genuine issue of material fact exists as to this retaliation claim and summary judgment

24   is appropriate.

25

26

27

28

JACKSON LEWIS LLP
LAS VEGAS

iv.    *Being Told Not to Wear His Nametag in the McDonald's Line*

Martinez cannot establish a claim of retaliation based upon being told not to wear his Monte Carlo nametag while in line at McDonald's.  Assuming this incident occurred, the only impact this alleged incident had was that Martinez felt it was a "little odd."  Martinez Depo. at 162:16-19.  Other than the alleged instruction not to wear his nametag, Martinez admits nothing else came of it.  *Id.* at 162:21-24.  Nothing about this claim rises to the level of being a materially adverse employment action.  *Brooks*, 229 F.3d at 928.[21]  In fact, when compared to recent court decisions, this claim is truly trivial.  *See Young v. Columbia Sussex Corp.*, No. CV-08-01325-PHX-FJM, 2009 U.S. Dist. LEXIS 101532, *12-13 (D. Ariz. Oct. 15, 2009)(plaintiff's retaliation claim failed even though evidence showed her manager made several offensive remarks over an eight month period and slammed doors in her face).

v.    *MacDonnell's Email to Russell Jones*

Martinez presents no evidence that the email MacDonnell sent to Russell Jones was in any way connected to him, let alone motivated by protected activity.  MacDonnell admits that he emailed Mr. Jones, but the purpose of the email was to determine whether Diablo's employees were allowed to drink at Monte Carlo bars in uniform.  MacDonnell Depo. at 123:11-25.  Diablo's employees are not allowed to do so and therefore Mr. Jones handled the situation accordingly.  *Id.*  The concern had nothing to do with Martinez, in fact, MacDonnell testified that Diablo's employees could frequent any Monte Carlo bar if they removed their uniform first.  *Id.* at 122:7-12, 124:23-125:4.  Martinez admits that he does not know if the email could have concerned something else; it's simply his "assumption" that it must have been an attempt to retaliate against him.  Martinez Depo. at 167:24-168:4.  Martinez's subjective belief aside, no genuine issue of material fact exists as to a causal connection between the email and Martinez having engaged in

---

[21]     *Burlington Northern & Santa Fe Ry.*, 548 U.S. at 68 ("[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience") (citations omitted).

1   protected activity.[22]   *Bradley*, 104 F.3d at 270.   Accordingly, summary judgment should be

2   granted as to this retaliation claim.

3          vi.      *Taking Away the Beer Container*

4          Assuming Mr. Schloss took away a bus tub to hold beer, there is nothing that ties this

5   trivial act to protected activity.   Schloss has no recollection of this event, but even if he had

6   Martinez testifies that the only impact that had on him was having to use the working beer cooler

7   on the other end of the bar.   Schloss Dec. ¶ 6; Martinez Depo. at 172:15-173:1.   As previously

8

9   discussed this type of annoyance does not amount to an adverse employment action.[23]   *Burlington*

10  *Northern & Santa Fe Ry.*, 548 U.S. at 68; *Brooks*, 229 F.3d at 928; *Young*, 2009 U.S. Dist.

11  LEXIS 101532 at *12-13.   Summary judgment is appropriate as to this claim.

12         vii.     *Presence of The Light Group's Attorney at a Grievance Meeting*

13         Martinez's claim that the presence of Mr. Dornak at a grievance meeting was retaliatory

14  on the part of Monte Carlo is without merit.   First, Dornak was not at the meeting representing

15  Monte Carlo in any fashion.   Ohanian Supplemental Dec. ¶ 4.   Monte Carlo did not invite him to

16  the grievance.   *Id.*   In fact, Monte Carlo Human Resources had no idea Mr. Dornak would even

17

18  be attending the meeting.   *Id.*   Therefore, Mr. Dornak's presence at the grievance was not an

19  employment action at all because Monte Carlo did nothing.

20         Lastly, Martinez presents no evidence that he was or that a reasonable person would be

21  deterred by the presence of Mr. Dornak at a grievance meeting at which three Union officials and

22

23  ---

[22]     It is also worth noting that Martinez claims this happened in December 2011 or January 2012, however
24  MacDonnell did not know about the Martinez's charges of discrimination until sometime in early 2012. MacDonnell
    Dec. ¶ 3.   Absent evidence that MacDonnell knew about any protected activity at the time the action occurred,
25  Martinez's retaliation claim is meritless.

[23]     Martinez presents no evidence of a causal connection between the action and a protected activity aside from
26  his subjective belief that the decision to take the tub "was based on some information that he had about me or
    something." *Id.* at 173:3-10. Martinez admits that he never asked Schloss why he was removing the containers and
27  never followed up on it later either. *Id.* at 174:6-12, 175:8-13.   Martinez cannot merely assume Schloss was acting
    in retaliation for some form of protected activity.   *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 745-746 (9th Cir. 2004)
28  (merely arguing that defendant's stated reason for plaintiff's employment action is "unworthy of credence" is
    insufficient, without any supporting evidence, to create a genuine issue of material fact).

several other people were present.   Martinez Depo. at 67:24-68:1, 68:23-69:4; Exhibit 33. Indeed, this meeting is alleged to have occurred in June 2008, and Martinez filed three charges of discrimination thereafter. Exhibits 15, 20 and 22.  As demonstrated by *Brooks,* and confirmed by *Burlington Northern & Santa Fe Ry.,* not everything that happens at work is sufficient to establish a materially adverse action such that a reasonable person would be deterred from engaging in protected activity.   229 F.3d at 928-929; 548 U.S. at 68.   Martinez, presumably a reasonable person, was not deterred.   As such, Martinez's retaliation claim based on this event clearly fails.

**III.   CONCLUSION**

Martinez is barred from bringing his claim of age or sex discrimination arising from his failure to be hired at Brand.  However, even if not barred, he fails to establish the elements of a case of sex discrimination against Monte Carlo, and there is no evidence of pretext.  Likewise, Martinez cannot establish that but for his age he would have been hired at Diablo's or Brand. Finally, Martinez's claim of retaliation fails because the alleged retaliation is either not materially adverse or there is no causal connection between the events he identifies as retaliatory and his protected activity.  For each and all of these reasons, Monte Carlo respectfully requests that Court grant summary judgment in its favor and against Plaintiff Martinez on all claims raised.

Dated this 16th day of September, 2013.

JACKSON LEWIS LLP


_____/s/ Elayna J. Youchah_____
Elayna J. Youchah, Bar # 5837
Ethan D. Thomas, Bar # 12874
3800 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169

*Attorneys for Defendant*
*Victoria Partners dba Monte Carlo*

1

**CERTIFICATE OF SERVICE**

2    I hereby certify that I am an employee of Jackson Lewis LLP and that on this 16th day of

3    September, 2013, I caused to be served a true and correct copy of the above and foregoing

4    **DEFENDANT VICTORIA PARTNERS' MOTION FOR SUMMARY JUDGMENT AS TO**

5    **PABLO MARTINEZ** via ECF Filing, properly addressed to the following:

6
     R. Tomas Olmos
7    ALLRED MAROKO & GOLDBERG
     6300 Wilshire Blvd., Ste. 1500
8    Los Angeles, California 90048

9
     M. Lani-Esteban-Trinidad
10   ESTEBAN-TRINIDAD LAW, P.C.
     4315 N. Rancho Dr., Ste. 110
11   Las Vegas, Nevada 89130

12   *Attorneys for Plaintiffs*

13
     Scott M. Mahoney
14   Anthony B. Golden
     FISHER & PHILLIPS LLP
15   3800 Howard Hughes Parkway
     Suite 950
16   Las Vegas, Nevada 89169

17
     *Attorneys for Defendant Light Group*
18

19

20                                          _____/s/ Emily Santiago_____
                                            Employee of Jackson Lewis LLP
21

22

23

24

25

26

27

28