**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Pablo Martinez, et al.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>Victoria Partners, et al.,<br><br>　　　　　Defendants. | Case No.: 2:12-cv-502-JAD-VCF<br><br>**Order Granting in Part Victoria Partners' Motion to Dismiss**<br>**[Doc. 19]** |

This employment dispute involves four middle-aged male Las Vegas bartenders—Pablo Martinez, Tyrone Armstrong, Cary Ven Biezen, and Daniel Atkinson—who work at the Monte Carlo hotel and claim their employers passed them over in favor of younger female bartenders when hiring for two new hotel bars.[1] *See* Doc. 1. They allege gender discrimination under Title VII, 42 U.S.C. § 2000e *et seq.*, age discrimination under the ADEA, 29 U.S.C. § 621, and retaliation under both Title VII and the ADEA. Doc. 1. Victoria Partners, owner of the Monte Carlo, moves to dismiss the action in part on the limited grounds that Plaintiffs Armstrong, Van Biezen, and Atkinson failed to exhaust some of their administrative remedies. Doc. 19. Based on the limited record before it on the motion to dismiss, and finding the motion appropriate for disposition without oral argument, the Court grants the motion in part and denies it in part.

---

[1] When the Complaint was filed, Martinez was 53, Armstrong was 49, Van Biezen was 48, and Atkinson was 47. *See* Doc. 1.

1

## Background[2]

Defendant Victoria Partners does business as the Monte Carlo Resort and Casino in Las Vegas, Nevada. Doc. 1 at 2. Since at least 2007, Monte Carlo has contracted with the Light Group to run two restaurants inside the Monte Carlo: Diablo's Cantina, LLC and MC Steak, LLC. *Id.* at 2. All four plaintiffs, who were employed as bartenders in other Monte Carlo bars, applied for bartending positions at one or both of these new establishments and allege that females under the age of forty were selected instead—even though some of the new hires had no prior experience as bartenders. *Id.* at 5.

Martinez, Armstrong, and Van Biezen filed administrative charges with the EEOC.[3] Martinez's first charge, filed on November 1, 2007, claimed that he and "other males" were not given an opportunity to prepare for their interviews at Diablo's, although younger female candidates were given time to prepare. Doc. 19-10 at 2. He alleged age and sex discrimination, as well as retaliation. *Id.* at 2-3. The EEOC issued Martinez a Determination Letter on September 10, 2010, which stated in part that "[e]xamination of the evidence . . . reveals reasonable cause to believe that a class of individuals was denied hire because of

---

[2] This background section is derived from Plaintiff's Complaint for general illustrative purposes, and is not intended as any finding of fact.

[3] Plaintiffs failed to attach any administrative charges to the complaint, nor point to the filing of any specific charge filed. A Court's ruling on a 12(b)(6) motion to dismiss is limited to "matters outside the pleadings." Rule 12(d). If matters outside the pleadings are considered, the motion must be treated as one for summary judgment under Rule 56. *Id.* An exception to this mandatory conversion exists when the Court "consider[s] a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (superseded by statute on other grounds as recognized in, 502 F.3d 1141). More recent Ninth Circuit authority has converted *Parrino*'s holding to the disjunctive, making the test for inclusion either "necessary reliance" or where "the contents of the document are alleged in the complaint, the document's authenticity is not in question and there are no disputed issues as to the documents relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). A document meeting these criteria may be considered by the court on a motion to dismiss even if it has not been attached. *See Parrino*, 146 F.3d at 706. Victoria's Motion attaches several EEOC charges of Discrimination, purportedly received as the result of FOIA requests. *See, e.g.*, Doc. 19-2 at 2. Plaintiffs do not contest the authenticity of these documents. *See* Doc. 21 at 5. Since authenticity is uncontested and the Plaintiffs' Complaint necessarily relies on at least some of these documents, the Court considers the charges in connection with this motion.

their age . . . and their sex." Doc. 19-11 at 2.[4]  The commission issued Martinez a right to sue letter on June 6, 2011.  Doc. 19-12 at 2.[5]  Martinez filed another charge on September 29, 2008, alleging age discrimination.  Doc. 19-17 at 2.  The EEOC did not issue a Determination Letter, but gave Martinez a Notice of Right to Sue on August 31, 2010.  Doc. 19-18 at 2.  The EEOC subsequently reconsidered this decision and issued a Determination Letter stating that reasonable cause existed to find that age discrimination had occurred with respect to the "bartender positions."  Doc. 19-20 at 2.

Martinez filed several other EEOC charges.  The first was a claim for retaliation on May 22, 2008, based on his filing of the November 1, 2007, charge.  Doc. 19-13 at 2.  Martinez amended this charge on June 12, 2008.  Doc. 19-14 at 2.  The EEOC issued another Determination Letter in which it stated that reasonable cause indicated that unlawful retaliation against Martinez had occurred.  Doc. 19-15 at 2-3.  Again, the EEOC issued a Notice of Suit Right to Sue on June 6, 2011.  Doc. 19-16 at 2.  Martinez filed another retaliation charge on September 8, 2011, for which no evidence of subsequent administrative actions have been submitted.  Doc. 19-23 at 2.  Finally, Martinez filed an unperfected charge alleging age and national origin discrimination, as well as retaliation, on October 6, 2010.  Doc. 19-21 at 2.  The EEOC issued Martinez a right to sue letter on November 29, 2010, in connection with this charge.  Doc. 19-22.

Armstrong brought two charges of his own.  The first was filed on May 22, 2008, and alleged race and age discrimination.  Doc. 19-5 at 2.  The EEOC issued a Determination Letter to Armstrong on September 10, 2010, in which it found reasonable cause to believe

---

[4] Although the complaint does not necessarily rely on the EEOC Determination Letters, the Court may take judicial notice of them.  Judicial notice is an additional exception to conversion of Rule 12(b)(6) motions to Rule 56 motions.  The rule provides that "[t]he Court may take judicially notice a fact that is not subject to reasonable dispute because it . . . (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.*  The Court may take judicial notice on its own at any stage of the proceeding. *Id.* at 201(d).  The Court, in accordance with common practice, takes judicial notice of the EEOC's determination letters pursuant to Fed. R. Evid. 201.  *See, e.g.*, *In re American Apparel, Inc. Shareholder Derivative Litigation*, 2012 WL 9506072, at *20 (C.D. Cal. July 31, 2012).

[5] Monte Carlo does not specifically ask for dismissal on the grounds that any plaintiff failed to timely bring suit after being issued an EEOC Right to Sue Letter.  The Court does not consider whether such dismissal is appropriate.

3

1  that he was subject to race and age discrimination. Doc. 19-6 at 1-3. However, as the EEOC
2  failed to reconcile the charge, it issued Armstrong a Notice of Right to Sue on June 6, 2011.
3  Doc. 19-7 at 2. Armstrong brought his second charge on May 9, 2011, now alleging race,
4  age, and disability discrimination, as well as retaliation. Doc. 19-8 at 2-3. Armstrong was
5  issued a Notice of Right to Sue letter on May 16, 2012, for this charge. Doc. 19-9.

6  Van Biezen brought his single charge on September 12, 2011, alleging retaliation both
7  on his own behalf as well as similarly situated individuals. Doc. 19-3 at 2. He also claimed
8  to have "filed a charge of discrimination with [the] EEOC against Monte Carlo and Light
9  group with other employees." *Id.* The EEOC issued Van Biezen a Notice of Right to Sue
10 letter, and Defendants filed it on November 19, 2012. Doc. 32 at 1, 5.

11 Plaintiffs' Complaint, filed on March 26, 2012, contends broadly that "Plaintiffs
12 complained and objected to the denial of employment and alleged discrimination on the basis
13 of gender (male) and age, both internally with Defendants' Human Resources departments
14 and also filed charges of employment discrimination with the EEOC. Since making said
15 complaints with Defendants and filing charges with the EEOC, Plaintiffs have been subject
16 to retaliatory harassment, including being subjected to written reprimands and threatened
17 with suspension and termination." Doc. 1 at 5. It also alleges that "On or about November 1,
18 2007, and on subsequent dates, Plaintiffs filed charges of employment discrimination" for
19 gender and age discrimination, as well as retaliation. Doc. 1 at 4. Finally, it alleges that on
20 September 10, 2010, the EEOC issued a Letter of Determination finding that "Defendants"
21 were subject to unlawful sex and age discrimination, and were unlawfully retaliated against
22 for objecting to these practices. *See id.*

23 Victoria Partners challenges some of the Plaintiffs' exhaustion of their administrative
24 remedies. It argues that Atkinson cannot "piggyback" on any retaliation claim; Armstrong's
25 charges indicated an intent not to bring a charge for sex discrimination; and Van Biezen
26 either failed to exhaust his claims, or at least affirmatively limited them to retaliation only.[6]
27
28
   [6] Plaintiffs have filed a response, and Victoria has filed a reply.

4

**Discussion**

Federal Rule of Civil Procedure 8(a) governs the standard for pleadings in a federal cause of action and provides, "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction . . . .; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought."[7]  A district court may dismiss a complaint brought under Rule 8(a) for failing to state a claim upon which relief can be granted.[8]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."[9]  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level."[10] The Court is also "not bound to accept as true a legal conclusion couched as a factual allegation."[11]  To state a "plausible" claim for relief, the plaintiff must "plead[] factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."[12]  This requires a plaintiff to state "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the allegations charged.[13]

**A.     Van Biezen's Unexhausted Charge of Discrimination**

Victoria Partners originally moved to dismiss Van Biezen's retaliation claim on the grounds that, at the time suit was filed, he had a charge pending with the EEOC and was

---

[7] Fed. R. Civ. Proc. 8(a).

[8] Fed. R. Civ. Proc. 12(b)(6).

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[11] *Id.* (quoting *Papsan v. Allain*, 478 U.S. 265, 286 (1986)).

[12] *Iqbal*, 556 U.S. at 678-79.

[13] *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556).

5

obligated to exhaust his administrative remedies prior to filing suit. Doc. 19 at 1-2. After Victoria Partners filed its motion, on September 4, 2012, the EEOC issued Van Biezen a Notice of Right to Sue letter, which Defendants filed into the docket on November 19, 2012. Doc. 32 at 1, 5. To the degree Victoria Partners' motion seeks dismissal on the basis that Van Biezen's EEOC charge remained unexhausted, the motion is denied as moot.

**B.    Application of the "Piggyback" Rule**

Victoria Partners' Motion hinges on various administrative-exhaustion arguments. *See* Doc. 19. All involve application of the single-filer or "piggyback" rule, "an exception to the rule that a timely administrative charge is a prerequisite" to bringing an employment discrimination suit.[14]

**1.    Title VII exhaustion requirements**

Both Title VII and the ADEA prohibit employers from discrimination against individuals based on their sex and age, respectively,[15] and further prohibit employers from retaliating against an individual who seeks to enforce his or her rights under these statutes.[16] Exhaustion of administrative remedies in a Title VII or ADEA case is a condition precedent to filing suit in federal court.[17] An ADEA plaintiff can meet this requirement by either notifying the EEOC and then pursuing a claim in federal court any time between 30 and 180 days after the notice;[18] or providing the EEOC with notice, waiting for the conclusion of the administrative inquiry, and then filing suit.[19] Under Title VII, the first option is unavailable

---

[14] *See, e.g.*, *Horton v. Jackson County Bd. of Comm'rs*, 343 F.3d 897, 899 (7th Cir. 2003).

[15] 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 633.

[16] *See* 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d); *see University of Texas Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2523 (2013) (citations omitted).

[17] *Sanchez v. Pacific Powder Co.*, 147 F.3d 1097, 1100 (9th Cir. 1998); *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988).

[18] 29 U.S.C. § 633a(d). The time period is extended for plaintiffs in "deferral" states, but the difference between filing periods is not relevant here as there is no evidence that any plaintiff filed an employment discrimination claim with a Nevada state agency authorized to provide similar relief.

[19] *See id.*; *Girard v. Rubin*, 62 F.3d 1244 (9th Cir. 1995) (citing *Stevens v. Dep't of Treasury*, 500 U.S. 1, 7 (1991)).

6

and the second is restricted: to exhaust administrative remedies, a plaintiff must typically file a Charge of Discrimination within 180 days of the claimed conduct, receive a Notice of Right to Sue letter from the EEOC, and file suit no later than 90 days after receipt of that notice.[20]

These administrative exhaustion requirements are not jurisdictional[21] and are subject to equitable remedies such as waiver, estoppel, and tolling.[22] To determine whether equitable remedies are appropriate, courts look to the relative fault of the parties.[23] "[I]f an agency reaches the merits of a claim . . . administrative remedies should be presumed sufficiently exhausted to permit suit in federal court."[24] Similarly, "once a plaintiff is *entitled* to receive a right-to-sue letter . . . it makes no difference whether the plaintiff actually obtained it."[25]

The administrative exhaustion process must be viewed in light of the legislative intent behind employment discrimination statutes. The Ninth Circuit has characterized Title VII as evincing Congressional intent "to coordinate the actions of state agencies, federal agencies, state courts and federal courts. The purpose of this integrated system of administrative and judicial remedies is to provide complete relief to victims of employment discrimination."[26] Similarly, the ADEA has been characterized as "remedial and humanitarian legislation and should be liberally interpreted to effectuate the congressional purpose of ending age discrimination in employment. . . . [S]trict compliance with [the claims period] should not be

---

[20] 42 U.S.C. § 2000e-5(e). As with the ADEA, the time period is extended to 300 days in "deferral" states, where an aggrieved employee has brought discrimination claims before a corresponding state agency authorized to grant such relief. *Id.* at § 2000e-5(e)(1). Again, this distinction is not relevant here because there is no evidence that any of the plaintiffs brought their claims before any analogous Nevada state authority in the first instance.

[21] *Temengil v. Trust Territory of Pacific Islands*, 518 F.3d 1097, 1104 (9th Cir. 2008).

[22] *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

[23] *Surrell v. California Water Service Co.*, 518 F.3d 1097, 1104-05 (9th Cir. 2008).

[24] *Jasch v. Potter*, 302 F.3d 1092, 1096 (9th Cir. 2002).

[25] *Surrell*, 518 F.3d at 1104-05 (emphasis in original).

[26] *Porter v. Winter*, 603 F.3d 1113, 1117 (9th Cir. 2010).

7

required of laymen attempting to enforce their statutory rights."[27] Consistent with these broad remedial principles, a plaintiff who has filed a timely EEOC charge may also bring a charge on behalf of similarly situated individuals.[28] "The written charge need not identify by name the person on whose behalf it is made. The person making the charge, however, must provide the Commission with the name, address and telephone number of the person on behalf the charge is made."[29]

**2.    The "piggyback" or "single-filer" rule.**

The "single-filer" or "piggyback" rule is a judge-made exception to the timely administrative requirement, which allows a non-charge-filing plaintiff to claim the benefit of the plaintiff's previously filed charge.[30] The rule has been adopted in various iterations by a majority of courts of appeals, including the Ninth Circuit. Outside of the class or collective action context, "[t]he usual formulation is that if the would-be intervenor's claim arises out of the same or similar discriminatory conduct, committed in the same period, as the claim in the suit in which [the intervenor] wants to intervene, [the intervenor's] failure to file a timely charge will be disregarded."[31] The allegations in the charge must also place the employer on notice that the allegations are made on behalf of a group of individuals.[32] The essence of rule is that it is "wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC"[33] so long as the EEOC is

---

[27] *Naton v. Bank of California*, 649 F.2d 691, 696 (9th Cir. 1981) (quotation omitted).

[28] *See* 42 U.S.C. § 2000e-5(b), 29 C.F.R. § 1601.7(a); *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 414 & n.8 (1975); *Franks v. Bowman Transportation Corp., Inc.*, 424 U.S. 747, 771-72 (1976).

[29] 29 C.F.R. § 1601.7(a).

[30] *Horton*, 343 F.3d at 899; *EEOC v. Fry's Electronics, Inc.*, 770 F. Supp. 2d 1168, 1172-73 (W.D. Wash. 2011); *EEOC v. NCL America Inc.*, 504 F. Supp. 2d 1008, 1011 (D. Hawai'i 2007); *Berndt v. California Dep't of Corrections*, 2013 WL 4554953, at *2 (N.D. Cal. Aug. 27, 2013).

[31] *Horton*, 343 F.3d at 899 (citing cases).

[32] *Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554, 558 (11th Cir. 1997); *see Parra v. Bashas', Inc.*, 291 F.R.D. 360, 378-79 (D. Ariz. 2013).

[33] *Horton*, 343 F.3d at 899; *see Snell v. Suffolk County*, 782 F.2d 1094, 1100 (2d Cir. 1986).

8

provided with "sufficient information so that it may notify prospective defendants and to provide the [EEOC] with an opportunity to eliminate the alleged unlawful practices through informal methods of conciliation."[34] The rule "serves to prevent a wooden application of the administrative charge requirement where the ends of the requirement have already been satisfied."[35]

### a. Piggybacking requirements vary depending on work-unit size.

Courts of Appeal have looked to the number of persons involved when determining whether piggybacking is appropriate. Where the "work unit" subject to grievance is of the "modest size" of less than fifteen individuals, courts require only similarity in both substance and timing between the filer and non-filer's grievances.[36] With larger work groups, courts have required the "piggybacked" charge to expressly state that its filer brought claims on behalf of a similarly situated group of individuals, so to ensure that administrative conciliation efforts are applied broadly.[37] Finally, in a case involving approximately 150 affected individuals, the Ninth Circuit imposed the additional requirement that the filer not only make the claim on behalf of similarly situated individuals, but affirmatively acknowledge that he seeks to represent these individuals.[38]

### b. Plaintiffs have alleged a work-unit of at least a modest size.

The applicable standard to apply here is, at first blush, unclear. Even if the case law clarified whether the "work unit" should be measured from its overall number of employees or the number of potentially aggrieved employees—which it does not—the documents properly considered in this Motion to Dismiss do not indicate how many persons either

---

[34] *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 195 (quoting *Anderson v. Montgomery Ward & Co., Inc.*, 852 F.2d 1008, 1015 (7th Cir. 1988)) (quotation omitted).

[35] *Id.* at 196-97.

[36] *See Horton*, 343 F.3d at 899; *Howlett*, 49 F.3d at 195; *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1058 (2d Cir. 1990); *Allen v. Amalgamated Transit Union Local 788*, 554 F.2d 876, 878, 882-83 & n.9 (8th Cir. 1977).

[37] *See Tolliver*, 918 F.2d at 1058.

[38] *See Naton*, 649 F.2d at 697; *Harris*, 682 F.3d at 1136.

9

applied to be bartenders at Diablo's and MC Steak, or how many bartenders were actually hired. Martinez's November 1, 2007, charge tells that "at least" 20 people applied for a position at Diablo's; his September 29, 2008, charge offers no estimate of the number of applicants. Docs. 19-10 at 2; 19-17 at 2. But since all reasonable doubts and inferences must be construed in Plaintiff's favor for purposes of this motion, the Court finds that "at least" 20 persons could have applied to Diablo's and an unnamed number applied to MC Steak. If a jail and a metropolitan transit union—the operative groups in *Snell v. Suffolk County* and *Allen v. Amalgamated Transit Union Local 788*—qualified as work groups of "modest size," the Court finds that an applicant pool of "at least" 20 persons could also reasonably be deemed "modest."[39] And even if this were not the case, Martinez's September 29, 2008 charge for age discrimination evinces an even stronger intent to bring claims on behalf of other employees, as it actively stated that "I am filing this charge of discrimination on the behalf of others," in connection with an undefined number of Monte Carlo employees had been "denied hire." Doc. 19-17 at 2. Martinez's November 1, 2007, charge also plausibly notifies the EEOC of the class-wide nature of the grievance—thus satisfying the "heightened" rules applicable to larger groups. *See* Doc. 19-10 at 2.

### 3. The "piggyback" rule can apply to claims involving four plaintiffs.

Victoria Partners next claims that the "piggyback" rule should not be applied outside of the class context, especially where such a small class of employees is at issue. Doc. 19 at 10. Although the Ninth Circuit has never directly applied the "piggyback" rule outside of the class or collective action context,[40] it has not explicitly ruled out application of this doctrine in other contexts. Indeed, the panel in *Harris v. County of Orange* suggested that application of the rule does not hinge on formalistic statements that a plaintiff seeks to bring a claim as a

---

[39] *See Snell*, 782 F.2d 1094 (2d Cir. 1986); *Allen v. Amalgamated Transit Union Local 788*, 554 F.2d 876 (8th Cir. 1977).

[40] *See, e.g.*, *Harris*, 682 F.3d at 1136; *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 923 (9th Cir. 1982); *Naton*, 649 F.2d 691 at 696; *Bean v. Crocker National Bank*, 600 F.2d 754, 759 (9th Cir. 1979).

10

"class action" or "on behalf of others similarly situated."[41] Title VII authorizes the EEOC's authority to bring suits on behalf of a group of aggrieved individuals,[42] and trial courts in this district have extended the benefits to plaintiffs other than the commission itself.[43] And while allowing "piggybacking" in a four-plaintiff case may not lead to considerable administrative savings,[44] other circuits have applied the exception to cases involving as few as two plaintiffs.[45] Consistent with the broad remedial purpose of the employment discrimination statutes, the weight of circuit authority, and the guidance from both *Harris* and trial courts within this circuit, the Court finds that the "piggyback" rule cannot be categorically foreclosed simply because this lawsuit is not styled as a "class action" or a "collective action," or because it involves as few as four potential plaintiffs.

Trial courts in this circuit that have applied the rule emphasize that so long as the claims at issue are virtually the same, notice of one administrative claim is sufficient to place the allegedly offending entity on notice of all claims.[46] There is ample reason to conclude that the documents Martinez submitted in his November 1, 2007, charge set the administrative machinery in motion, such that the EEOC had notice of the "group" nature of his sex- and age-discrimination claims. Martinez's charge advised that he and "other males" were discriminated against during the hiring process at the Diablo's. Doc. 19-10 at 2. The EEOC's resulting Letter of Determination concludes, "[e]xamination of the evidence also reveals reasonable cause to believe that a class of individuals was denied hire because of their age . . . and their sex." Doc. 19-11 at 2. His September 29, 2008, charge similarly

---

[41] *Harris*, 682 F.3d at 1136.

[42] 42 U.S.C. § 2000e-5; *EEOC v. Cal. Psychiatric Transitions*, 644 F. Supp. 2d 1249 (E.D. Cal. 2009).

[43] *Berndt*, 2013 WL 4554953, at *3.

[44] *See Horton*, 343 F.3d at 900-01.

[45] *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 450 (11th Cir. 1993); *Wu v. Thomas*, 863 F.2d 1543, 1547-48 (11th Cir. 1989).

[46] *See NCL America Inc.*, 504 F. Supp. 2d at 1011.

11

brought age-discrimination claims on behalf of himself and a class of similarly situated persons, Doc. 19-17 at 2, for which the EEOC issued a determination letter and again found reasonable cause that "the aggrieved parties who were in the bartender position were denied hire because of their age." Doc. 19-20 at 2. In both cases, the EEOC's reaction clearly indicates that it was "on notice" that a group of individuals claimed to be affected by the discrimination, and that the EEOC investigated those claims in that scope. Indeed, Van Biezen's subsequently filed charge indicates that he previously filed an EEOC complaint with others. Doc. 19-3 at 2. Although the documents properly considered in this motion do not indicate that Van Biezen, Atkinson, or Armstrong were, in fact, individuals named in a "group" charge of discrimination,[47] on a motion to dismiss the Court's inquiry is whether the well-pled allegations and other relevant facts, construed in the light most favorable to the plaintiffs, create a plausible claim. The Court finds it plausible that Van Biezen, Atkinson, and Armstrong were among the individuals whose claims of discrimination were virtually the same as those Martinez detailed in his November 1, 2007, charge.

**C.     Application of "Piggyback" Rule to Specific Claims**

Having found that the "piggyback" rule can apply to the circumstances of this case so

---

[47] Plaintiffs assert that Martinez's September 29, 2008, charge was accompanied by a "Third Party Certification of Charge," which included, *inter alia*, Van Biezen, Atkinson, and Armstrong's names, although their addresses and telephone numbers have been redacted. Doc. 21 at 12. The Court notes that the Complaint does not "necessarily rely" on this document because the allegations, as pled, state that "Each" Plaintiff filed Charges of Discrimination and received Right to Sue letters. Doc. 1 at 4. Even if what "Each" means is that *some* Plaintiffs filed charges and *other* plaintiffs seek to benefit from that filing, reliance on the Third Party Certification is unnecessary because Martinez's November 1, 2007 charge, whose authenticity is uncontested, was brought on behalf of other individuals. Nevertheless, Plaintiffs' request that the Court take judicial notice of this document, Doc. 21 at 5, which Defendants contest in their reply. *See* Doc. 24.

Even if an EEOC Third Party Certification might be the hypothetical subject of judicial notice, the document attached to Plaintiffs' opposition is not satisfactory. The document, apparently obtained from a FOIA request of EEOC records, is entitled "certificate of charge" and contains a hand-written list of names which includes the three other plaintiffs in this case. Doc. 21 at 11-12. As submitted, it is simply a handwritten page with what is purportedly, but not conclusively, Martinez's signature, and the Court has been provided with no affidavit or other means by which to determine whether the signature is accurate. Indeed, the "Certificate" does not specify which of Martinez's claims, if any, have been brought on others' behalf. *See* Doc. 21 at 12. Although the document is dated September 29, 2008—the same date as Martinez's EEOC charge for age discrimination—there is insufficient evidence to conclude that this document was actually made part of any EEOC claim. Since there is insufficient evidence to show that the document is what it purports to be, the Court cannot conclude that its authenticity cannot be questioned, and it will be disregarded in determining this motion.

12

1 long as it involves the "same or similar discriminatory conduct, committed in the same
2 period," of which both the EEOC and the employer had notice, the Court now applies the
3 standard to the various Plaintiffs' claims.

### 1. The "piggyback" rule is not available to plaintiffs who file EEOC charges alleging similar conduct.

Victoria Partners argues that the "piggyback" rule is unavailable to Armstrong and Van Biezen as a categorical matter because both of these plaintiffs filed their own charges of discrimination after Martinez filed his November 1, 2007, charge. Doc. 19 at 14-16; 19-10 at 2. According to Victoria Partners, these plaintiffs are now limited to the scope of their own charges and cannot "piggyback" on any of the charges Martinez previously filed. Doc. 19 at 14-16.

The Ninth Circuit offers no guidance on what rule to apply when a plaintiff brings a cause of action on behalf of himself and other "similarly situated" individuals, some of whom subsequently file their own EEOC charges. However, the scope of the "piggyback" rule is not limitless. First, "[i]f one brings suit on his own behalf, or as named plaintiff on behalf of a class, he must have secured a right to sue by timely following the procedures set forth in Title VII."[48] Thus, the single-filer rule "cannot revive claims which are no longer viable at the time of filing."[49] The rule is also inapplicable in the narrow situation where the plaintiff, seeking the benefit of the prior charge, does so in the course of prosecuting a separate lawsuit.[50]

Other circuits have concluded that after a potential plaintiff has filed his or her own charge of discrimination, that plaintiff may not "piggyback" on the allegations contained in

---

[48] *Inda v. United Airlines*, 565 F.2d 554, 559 (9th Cir. 1977).

[49] *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 (9th Cir. 1976); *Berndt*, 2013 WL 4554953, at *2 (citing *Laffey*).

[50] *Inda*, 565 F.2d at 558-59; *Harris*, 682 F.3d at 1136-37.

13

another's charge.[51] The Second Circuit in *Holowecki v. Federal Express Corp.* reasoned that previous EEOC charge filers should not be afforded "piggyback" protection because "allowing an individual who has previously filed a charge to abandon that charge and piggyback onto the charges of another individual would too often frustrate the EEOC's statutorily-mandated efforts to resolve an individual charge through informal reconciliation."[52]

Although this outcome technically leaves the door open to applying the exception to *subsequent* filers, the trend is to foreclose both prior and subsequent filers. For example, the Fifth Circuit in *Mooney v. Aramco Services Co.* noted that, "[t]o allow a plaintiff to file an EEOC charge, file suit upon that charge and then, at the eleventh hour, when the statute of limitations has run, to amend his complaint in reliance on the charge of another belies the policies behind the single filing rule and controverts congressional intent."[53] The Eighth Circuit in *Anderson v. Unisys Corp.* went even further: after acknowledging that "[i]t is somewhat ironic . . . that [an EEOC filer] who did not even file an administrative charge, is permitted to continue in [an] action while the others have been dismissed," the court reasoned:

> Those plaintiffs who do file administrative charges . . . should be bound by the statute of limitations, which is normally stated in the right-to-sue letter. Even if those plaintiffs are piggybacking on another employee's timely administrative charge, once they file *separate* administrative charges, they cannot rely any further on the other claimant's actions and mut timely file suit after receiving their right-to-sue letters. Thus, any claimant who files an administrative charge and receives a right-to-sue letter from the EEOC must file suit within ninety days after receiving that letter to preserve the cause of action.[54]

In *Gilitz v. Compagnie Nationale Air France*, the Eleventh Circuit adopted *Anderson*'s

---

[51] *See, e.g.*, *Holowecki v. Federal Express Corp.*, 440 F.3d 558, 564-65 (2d Cir. 2006); *see also Anderson v. Unisys Corp.*, 47 F.3d 302, 308-09 (8th Cir. 1995); *Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554, 557-58 (11th Cir. 1997); *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1223-24 (5th Cir. 1995) (overruled on other grounds as recognized in 376 F.3d 305, 312 n.9 (5th Cir. 2004).

[52] *Holowecki*, 440 F.3d at 564-65.

[53] *Mooney*, 54 F.3d at 1223.

[54] *Anderson*, 47 F.3d at 309.

14

1 conclusion and reasoning, and added that the result properly upheld the Congressional
2 balancing of plaintiff and employer interests.[55]  Considering the weight of persuasive
3 authority from other circuits, the Court finds that distinguishing the availability of the
4 "piggyback" exception between *prior* and *subsequent* charge filers would be improvident,
5 and concludes that Anderson and Van Biezen may not piggyback on Martinez's filings
6 simply because they may have filed after he did.

### a. Van Biezen may benefit from Martinez's charge.

Victoria Partners argues that Van Biezen "voluntarily restricted" his charge to retaliation only after he filed his September 12, 2011, charge.  Doc. 19 at 14-16.  However, Van Biezen's inability to "piggyback" on Martinez's November 1, 2007, charge depends on whether the allegations in the prior and subsequent charges are properly construed as *similar*.

Van Biezen's September 12, 2011, charge states, without further elaboration, that he "previously filed a charge of discrimination with [the] EEOC against Monte Carlo and Light Group with other employees."  Doc. 19-3 at 2.  In substance, the charge alludes to retaliation only, specifically stating that his employers allegedly "forced [him] to go to another bar to receive remedial training, which caused [him] to lose money," was informed of "cash variances . . . in violation of union policy," underwent a change in his break schedule, and was placed "at a bar with only 3 spaces for bartenders."  Doc. 19-3 at 2.

Van Biezen's new charge contains no allegations of sex or age discrimination, affirmatively seeks to distinguish his filing from his prior "group" filing, and now refers to prior acts for which he claims to have suffered retaliation.  *See* Doc. 19-3.  The Court is mindful that the administrative exhaustion requirements "were not meant to erect a massive procedural roadblock to access the courts, but rather to give the agency the opportunity to right any wrong it may have committed."[56]  Moreover, the process of submitting a grievance "was designed to protect the many who are unlettered and unschooled in the nuances of

---

[55] *Gilitz*, 129 F.3d at 558-59.

[56] *Jasch*, 302 F.3d at 1096.

15

literary draftsmanship."[57]

Victoria Partners' argument that Van Biezen "voluntarily restricted" the scope of his administrative causes of action ignores the plausible alternative explanation that Van Biezen "limited" the scope of his charge to post-hoc retaliation because the EEOC's administrative inquiry was working as it should: Martinez's November 1, 2007, charge had already placed the EEOC on notice that a group of individuals, including Van Biezen, had been discriminated against on the basis of their sex and age during the Diablo's hiring process. If Van Biezen knew the EEOC was investigating his charges, there was no reason to submit his own charge alleging the same claims. Tellingly, Van Biezen brought his retaliation charge on September 12, 2011—after Martinez received his own Notice of Right to Sue Letter on June 6, 2011. This suggests that Van Biezen's goal was not to interfere with the administrative investigation of Martinez's "group" claim. Construing all doubts and inferences in Van Biezen's favor for purposes of the motion to dismiss, the Court finds that Van Biezen's charge of discrimination is based on wholly distinct circumstances, which do not seek to benefit from Martinez's November 1, 2007, charge.

To accept Victoria Partners' argument that Van Biezen's subsequent retaliation charge "limits" his ability to benefit from Martinez's group claim also ignores the reality of many retaliation claims—which employees frequently allege arose as a *result* of their filing a prior EEOC complaint, long after the statute of limitations has passed. When an employee previously sought the benefit of the "single filer" rule, the employee would be forced to choose between asserting the subsequent retaliation charge and effectively abandoning the underlying allegations of discrimination (as the time period for bringing the underlying claims of discrimination had expired), or electing not to file a charge for retaliation at all to continue benefitting from the "single filer" rule. Employees should not be held in administrative hostage simply because their alleged retaliation relates back to a charge for which that employee depended on the efforts of others. Applying the "piggyback" rule

---

[57] *Waters v. Heublein, Inc.*, 547 F.2d 466, 468 (9th Cir. 1976) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970)).

1 reflexively to bar application whenever a potential plaintiff has filed a charge somehow
2 "related" to the allegations of the group claim is the same kind of "wooden application of the
3 administrative charge requirement" the rule was developed to counterbalance.[58]  For these
4 reasons, the Court concludes that any relation between Van Biezen's retaliation allegations
5 and the prior complaint is incidental, and does not reflect his intention to abandon his sex and
6 age claims.  Victoria Partners' motion to dismiss Van Biezen's claims of age and sex
7 discrimination is denied.

### b. Armstrong may not benefit from Martinez's charge.

Victoria Partners also argues that Armstrong voluntarily limited the scope of his charges and cannot "piggyback" on Martinez's November 1, 2007, charge as it relates to sex discrimination.  Doc. 19 at 14-16.  Armstrong brought his first charge on May 22, 2008, alleging race and age discrimination.  Doc. 19-5 at 2.  Therein, he claimed, "I put my name on a bid sheet with a bartender position with Diablo's Cantina" and then filed a grievance after he was not selected for the "pour" test and was informed that he was not eligible to apply.  *Id.*  He also alleged that of the "20 or more employees" hired as bartenders, none were African American or over the age of 40.  *Id.*  The EEOC issued a Determination Letter to Armstrong on September 10, 2010, which found reasonable cause to believe that he was subject to race and age discrimination.  Doc. 19-6 at 1-3.  After the EEOC failed to reconcile the suit, it issued Armstrong a Notice of Right to Sue on June 6, 2011.  Doc. 19-7 at 2.

Armstrong then brought another EEOC charge on May 9, 2011, this time alleging race, age, and disability discrimination, as well as retaliation.  Doc. 19-8 at 2-3.  In his charge, he alleged that Monte Carlo had suspended him for handling food with dirty hands, and was subsequently suspended again "for having not allegedly not emptied the water from a portable bar."  Doc. 19-8 at 2.  Armstrong also claimed that since he filed his May 22, 2008, charge, he had been subject to harassment and intimidation, which included "being spied on and constantly watched by managers; being told to leave the cafeteria when other

---

[58] *Howlett*, 49 F.3d at 196-97.

employees were allowed to stay and eat; being told that I should transfer to a bar inside the hotel which was due to close; and being told to overcharge a client by a manager." *Id.* at 2-3. Armstrong was issued a Notice of Right to Sue letter on May 16, 2012, for this charge. Doc. 19-9.

Unlike Van Biezen's charge, Armstrong's charges do not reference or otherwise distinguish Martinez's November 1, 2007, charge in any way. Indeed, both Armstrong and Martinez's charges allege discrimination at Diablo's. Additionally, Armstrong brought his charge of discrimination on May 22, 2008, during the time the EEOC was investigating Martinez's allegations. There is nothing in Armstrong's charges which suggests that he either sought to bring them on behalf of others, or sought the benefit of prior filings. Thus, Armstrong's complaint is plausibly restricted in scope to the allegations of race, age, and disability discrimination, as well as retaliation. As Armstrong failed to raise a sex discrimination claim among his allegations, Armstrong's claim for sex discrimination must be dismissed.

**2.    Atkinson may utilize the "piggyback" rule, but no retaliation charges were filed on behalf of others.**

Unlike Van Biezen and Armstrong, Atkinson never filed an EEOC charge and thus falls into the class of plaintiffs more commonly deemed to benefit from the "piggyback" rule.[59] Aside from its general argument that the "piggybacking" rule should not apply to this case, Victoria Partners does not argue that Atkinson may not benefit from the sex or age allegations contained in Martinez's or Armstrong's charges. Instead, it argues that Martinez's and Armstrong's allegations of retaliation were particular to those two individuals, and thus cannot be used by others to establish the presence of "similar" conduct. Doc. 19 at 10-11. The Court agrees.

**a.    Martinez's and Armstrong's charges**

Several, but not all, of Martinez's charges alleged retaliation. His November 1, 2007, charge alleged that Monte Carlo was retaliating against him due to his participation in union

---
[59] *See Anderson*, 47 F.3d at 309.

activities. Doc. 19-10 at 3. Similarly, Martinez's May 22, 2008, and June 12, 2008, charges alleged that he was "retaliated against for filing [the November 1, 2007, charge]." Docs. 19-13 at 2; 19-14 at 2. His September 8, 2011, charge also stated that he was being retaliated against for filing "multiple complaints with the EEOC." Doc. 19-23 at 2. Armstrong's May 9, 2011, charge alleges that Monte Carlo retaliated against him for filing a May 22, 2208, charge, and he had "been subjected to harassment and intimidation including but not limited to: being spied on and constantly watched by managers; being told to leave the cafeteria when other employees were allowed to stay and eat; being told that I should transfer to a bar inside the hotel which was due to close; and being told to overcharge a client by a manager." Doc. 19-8 at 2-3.

None of these charges can be fairly read as intending to allege retaliation on behalf of a class of individuals such that Atkinson may claim the benefit of their filing date. The language in Martinez's November 1, 2007, charge pertains only to his own participation in union activities, Doc. 19-10 at 3, and while the EEOC's Determination Letter indicated that there was "reasonable cause . . . that a class of individuals was denied hire because of their age . . . and their sex," it limited discussion of Martinez's retaliation claims only to Martinez himself. Doc. 19-11 at 2. Martinez's other retaliation allegations, as well as Armstrong's, are similarly limited in scope. Thus, Atkinson may not avail himself of the benefit of these filings to establish a retaliation cause of action.

### b. Van Biezen's charge

Victoria Partners also argues that Atkinson may not rely on Van Biezen's retaliation charge, even if the charge has been exhausted. Doc. 19 at 10-11. Van Biezen does seek relief on behalf of others, but only with respect to the allegation that he "and others *who filed with the EEOC* are being watched by [Monte Carlo]." *Id.* (emphasis added). Since Atkinson never filed a charge with the EEOC, he is necessarily outside the scope of the persons included in Van Biezen's filing. As no plausible grounds exist to construe Martinez's, Armstrong's, or Atkinson's retaliation claims to a class of persons that include Atkinson, Victoria Partners' motion to dismiss Atkinson's retaliation claims is granted.

**Conclusion**

Accordingly, based upon the foregoing reasons and with good cause appearing and no reason for delay,

It is **HEREBY ORDERED** that Victoria Partners' Motion to Dismiss [Doc. 19] is **GRANTED** in part and **DENIED** in part.

It is **GRANTED** as to Atkinson's claims for retaliation.

It is **GRANTED** as to Armstrong's claims for sex discrimination.

It is **DENIED** in all other respects.

DATED: March 27, 2014.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE